# IN THE COURT OF APPEALS OF IOWA

No. 14-1180
Filed September 10, 2015

**ESTATE OF DAVID PAUL MCFARLIN,**
**by Its Personal Representative,**
**JAMIE LAASS, JAMIE LAASS,**
**Individually, and JAMIE LAASS,**
**as parent and next friend of S.L.**
        Plaintiffs-Appellants,

**vs.**

**STATE OF IOWA,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Buena Vista County, Carl J.

Petersen, Judge.


        The Estate of David McFarlin appeals the district court's grant of summary

judgment to the State.  **AFFIRMED.**


        Stanley E. Munger and Jay E. Denne, of Munger, Reinschmidt & Denne,

LLP, Sioux City, for appellants.

        Thomas J. Miller, Attorney General, and Anne Updegraff, Assistant

Attorney General, for appellee.


        Heard by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

The Estate of David McFarlin (the estate),[1] by its personal representative Jamie Laass (David's mother), Jamie Laass individually and as parent and next friend of S.L. (David's sibling) appeal the district court's grant of summary judgment to the State. The estate claims the court erred in finding the discretionary function immunity exception precludes the State's liability for David McFarlin's death. The estate also claims the public duty doctrine does not preclude the estate's cause of action, and the applicable statutes cited by the estate create a private cause of action against the State. We find the district court did not err in granting the State's motion for summary judgment and affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS

We incorporate the district court's statement of the factual background:

> This case arises from a boating accident on May 31, 2010 on the waters of Storm Lake, which resulted in the death of a ten-year-old boy, David McFarlin. David was accompanied by his mother; his sister; his mother's companion, Harry Foote; and other minor family members that day. While boating on the lake, Mr. Foote's vessel struck a dredge pipe that was part of an ongoing dredge operation at Storm Lake. The force of the collision broke the motor loose, and the motor landed in the passenger compartment of the boat, striking David. He passed away from his injuries later that day. Mr. Foote stated during his deposition that he recognized what he believed were two dredges working independently on the lake. He was "confused" by the "multiple buoys" around the dredging operation, and believed he was being directed towards the area as a means to pass from one side of the

---

[1] The estate filed two other suits arising from the boating accident in this case. The first suit was brought in the United State District Court for the Northern District of Iowa, the named defendants included: The City of Storm Lake, Buena Vista County, the Lake Improvement Commission, Brunswick Corporation; Harry Foote, Randy Redig, Russell Harrington, and David Botine. The parties reached a settlement and the case was dismissed. The second suit was brought in the same court against Lakeside Marina, Inc. The court granted summary judgment in favor of Lakeside.

lake to the other. He did not see the dredge pipe in the water until immediately before impact.

Storm Lake is a meandered, sovereign body of water located in Buena Vista County, Iowa. Dredging has taken place on Storm Lake since 2002. While the State of Iowa initially operated the dredge through a contractor for the first year of its operation, an organization, the Lakeside Improvement Commission (LIC), was formed in 2003 in order to take over the operation. The LIC is comprised of representatives from Buena Vista County, the City of Storm Lake, the City of Lakeview, and the Lake Preservation Commission, a citizen organization. Because the lake is sovereign water, the Iowa Department of Natural Resources (DNR), through the Natural Resources Commission (Commission), must issue a permit to allow for the removal of any natural material from the land or water of the lake. *See* Iowa Code § 461A.53 [(2010)]. Each year the LIC submits new dredging plans, which are then approved by the Commission. Buena Vista County owns the dredge and accompanying equipment, and the dredge operators are employees of the City of Storm Lake. The State of Iowa provides reimbursement for the operation depending on that year's budget.

The estate filed its petition against the State of Iowa and the DNR on October 24, 2012. The estate claimed the State's negligence was the proximate cause of its damages. Laass and S.L. requested damages for bystander recovery and loss of consortium.

The State filed a motion for summary judgment on February 28, 2014,[2] claiming it possessed sovereign immunity, the estate's cause of action was not recognizable or arising from a statutory duty, the public duty doctrine prohibits the claim, the State was immune under the recreational use statute, and the State was entitled to discretionary function immunity. The estate filed a resistance to the State's motion.

---

[2] The DNR was dismissed as a party to the suit pursuant to the prohibition in the Iowa Tort Claims act on suits against state agencies for claims defined in Iowa Code chapter 669.

The district court held a hearing on April 25, and on July 9, the court granted the State's motion for summary judgment. The estate now appeals.

## II. STANDARD OF REVIEW

We review rulings on motions for summary judgment for the correction of errors at law. *City of Cedar Rapids v. James Props., Inc.*, 701 N.W.2d 673, 675 (Iowa 2005). "Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). A genuine issue of material fact exists if reasonable minds can differ on how an issue should be resolved. *Seneca Waste Solutions, Inc. v. Sheaffer Mfg. Co.*, 791 N.W.2d 407, 411 (Iowa 2010). We examine the record in the light most favorable to the nonmoving party and draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact. *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005). "A party resisting a motion for summary judgment cannot rely on the mere assertions in [her] pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented." *Stevens*, 728 N.W.2d at 827.

## III. DISCUSSION

### A. Discretionary Function Immunity

The estate claims the court erred in finding the State was immune from liability for any claim of negligence pursuant to the discretionary function

exception as a waiver of sovereign immunity in Iowa Code section 669.14 (Iowa Tort Claims Act).

"The Iowa Tort Claims Act prescribes procedures governing tort claims against the State for the negligent acts of its officers, agents, or employees." *See generally* Iowa Code ch. 669; *Schneider v. State*, 789 N.W.2d 138, 146 (Iowa 2010). The Act preserves aspects of sovereign immunity by excluding certain claims from its scope. *See Schneider*, 789 N.W.2d at 146. Those exclusions are outlined in Iowa Code section 669.14(!), which provides:

> Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.

Since the discretionary function exception is rooted in federal tort claims, our courts have relied heavily on federal decisions for guidance in its application. *Ette ex rel. Ette v. Linn-Mar Cmty. Sch. Dist.*, 656 N.W.2d 62, 67 (Iowa 2002). The State is entitled to immunity in this case only if it satisfies a two-part test as set forth in *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). *Goodman v. City of Le Claire*, 587 N.W.2d 232, 238 (Iowa 1998) (adopting the *Berkovitz* two-part test). "In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536; *Walker v. State*, 801 N.W.2d 548, 555–56 (Iowa 2011). If we

find the State did not have discretion in the execution of the particular function, immunity is not available. *Walker*, 801 N.W.2d at 555. If, however, we find the State exercised judgment in the exercise of the particular function, we then must determine whether that judgment is the type the legislature intended to shield the State from liability when it adopted section 669.14(1). *See id.* "The exception protects governmental actions and decisions which are made based on considerations of public policy grounded on social, economic, and political reasons." *City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.*, 617 N.W.2d 11, 19 (Iowa 2000). "[L]iability is the rule and immunity the exception." *Id.* (citation omitted). Thus, we will narrowly construe the discretionary function exception. *Madden v. City of Eldridge*, 661 N.W.2d 134, 138 (Iowa 2003).

### 1. Did the State Exercise Discretion?

"The first step in our analysis is to determine the exact conduct that is at issue," and then find if it involved "an element of judgment or choice." *Walker*, 801 N.W.2d at 556. For the conduct at issue, the district court cited the specifications of negligence in the estate's petition:

> (1) Defendants permitted the dredge operator to mark their dredge pipe with buoys every 100 yards instead of every 10 or 25 yards, misleading Mr. Foote and Plaintiffs into believing they were being safely directed, at a speed in Mr. Foote's discretion, through a channel to the open lake. In effect, Defendants directed Plaintiffs' powerboat, at planing speed, right at, not away from, the concealed dredge pipe, causing the fatal crash;
> (2) Allowing the placing of and placing the dredge pipe so as to endanger Plaintiffs' water craft, in violation of Iowa Code Section 461A.55 which states in pertinent part: "In removing sand, gravel, or other material from state-owned waters by dredging, the operator shall so arrange the operator's equipment that other users of the lake or stream shall not be endangered by cables, anchors, or any concealed equipment;"

(3) Allowing the dredge pipe to be concealed from Plaintiffs and Harry Foote, the powerboat's operator;

(4) Allowing the drainpipe to be in a location where it interfered with Plaintiffs' boating operations and their safety;

(5) Allowing dredging equipment to endanger Plaintiffs;

(6) Failing to adequately mark the dredge pipe that Plaintiffs' powerboat hit;

(7) Failing to warn boaters, including Plaintiffs and Mr. Foote of the nature, extent and danger of the dredging, including the fact, but not limited to it, that there were no adequate warnings at or near that portion of the dredge pipe which Plaintiffs' boat hit;

(8) In not establishing speed limits or warnings in the vicinity of the dredge pipe.

The district court also cited to an "Engineer's Report" drafted by the estate's expert, Marjorie Cooke. In the report she listed her findings on the State's conduct and potential liability in this case. The findings relevant to this appeal include:

(1) Boaters should be warned to keep out of the area, because it is a constant and unpredictable hazard to boaters on the lake.

(2) The dredge operation was improperly marked, and the design and installation of the buoys confused boaters.

(3) The State failed to assure installation of exclusion markers to keep boaters out of the hazardous area.

(4) The State failed to warn boaters of the dangers associated with the dredge operation.

(5) The State failed to enforce state laws for the safe operation of the dredge by permitting the arrangement of the dredge equipment to endanger the use of the lake.

(6) The State permitted an unsafe operation to continue for six years prior to the incident without enforcing the regulations that prohibited it.

(7) The State failed to train the lead DNR officer concerning his duty to enforce these rules.

(8) The State failed to exercise reasonable care for the protection of boaters on Storm Lake.

The district court distilled these factors into two general areas of alleged negligent conduct:

(1) allowing the dredge to be operated in a manner that endangered boaters by failing to enforce statutes and regulations concerning the dredging operation and exercise reasonable care for the protection of boaters, and (2) failure to adequately warn, mark, or exclude the area with the appropriate waterway markers or establish speed limits within the dredging area.

The estate claims the district court erred in its analysis of whether the mentioned conduct involved acts of discretion as the court focused on a statutory analysis as opposed to recognizing the basic common law liability of the State for the acts committed. The estate claims the State had a common law duty to maintain the lake for the safety of the lake's users and the State failed to carry its burden to show discretion was used in its actions. In the alternative, the estate claims the State violated various applicable statutes, and therefore discretionary immunity does not apply.

The district court analyzed the applicable statutes, and the estate's common law claim, and found discretionary function immunity applied; we agree. The district court noted the estate failed to establish the statutes in question created a mandatory duty for State employees. On the contrary, the statutes applicable to the State's actions create a permissive approach for State employees. *See e.g.*, Iowa Code § 462A.1 (Water Navigation Regulations, Powers and duties of commission) ("The commission may adopt and enforce rules under chapter 17A as necessary to carry out this chapter and to protect private and public property and the health, safety, and welfare of the public. In adopting rules, the commission shall give consideration to the various uses to which they may be put by and for public and private purposes, the preservation of each body of water, its bed, waters, ice, banks, and public and private property

attached thereto, and the need for uniformity of rules relating to the use, operation, and equipment of vessels and vehicles."). Additionally, the district court reasoned the Iowa code section governing the issuance and renewal of the permit for the dredging operation contains discretionary language. *See id.* § 461A.53 (1) & (2) ("The commission may enter into agreements for the removal of . . . natural materials from [ ] waters under the jurisdiction of the commission. The commission may specify the terms and consideration under which such removal is permitted and issue such written permits for such removal."). The statutes governing the conduct in this case create discretion or "an element of judgment or choice" in State employees to implement safety regulations concerning the dredging operation." *Walker*, 801 N.W.2d at 556.

### 2. Is This the Type of Discretion the Legislature Intended to Shield From Immunity?

Next, applying the second factor of the discretionary immunity function exception, we agree with the district court the challenged conduct, in this case, is the sort of conduct the legislature intended to shield from liability. In determining if the State's conduct is susceptible to liability, our supreme court has asked if the conduct in question was based on an "ad hoc decision, tailored to the particular circumstances" or, if the decision *could have been* based on broader considerations of public policy. *See Anderson v. State*, 692 N.W.2d 360, 365–66 (Iowa 2005). In *Anderson* our supreme court found the State was not liable, due to discretionary function immunity, for a student's injury caused from falling on an icy sidewalk after leaving the University of Northern Iowa library. *Id.* at 366. The

student claimed the State was negligent for allowing the library to remain open during a winter storm and for failing to remove ice from a walkway. *Id.* at 361. The student conceded the State proved the first prong of the discretionary function immunity test, but argued the State's decision was not based on broader public policy considerations. *Id.* at 364. After providing a thorough analysis of the discretionary function immunity jurisprudence[3] in Iowa, our supreme court disagreed and noted:

> The common thread running through all these decisions defeating the discretionary function immunity was the record in each of these cases did not show the governmental entity based its actions on the required policy considerations, as distinguished from an action arising out of the day-to-day activities of the business of government. Unless a governmental entity can demonstrate that when it exercised its judgment, it genuinely could have considered and balanced factors supported by social, economic, or political policies, we will not recognize the discretionary function immunity. *Graber*, 656 N.W.2d at 165.
> Applying this standard to the present case, we think the district court was correct in concluding Mercado and the State were

---

[3] *Walker*, 801 N.W.2d at 561 (concluding the decisions made by a correctional facility staff in the supervision of inmates did not involve consideration of broad public policy factors); *Madden*, 661 N.W.2d at 138 (finding building inspector's decision to not perform a required inspection was an ad hoc decision tailored to the specific circumstances, and not one grounded in considerations of public policy); *Graber v. City of Ankeny*, 656 N.W.2d 157, 164–66 (Iowa 2003) (finding a City's decision in negligently timing streetlights was not based on "anyone of authority balanc[ing] any priorities of competing interest" or "legitimate policy considerations," rather it was based on "a generic safety consideration"); *Ette*, 656 N.W.2d at 68 (finding school's decision to send a young student on an unsupervised cross-country bus trip was not a decision driven by public policy implications); *Messerschmidt v. City of Sioux City*, 654 N.W.2d 879, 881–83 (Iowa 2002) (finding the removal of traffic barricades preventing cars from entering a parade area and resulting in serious injury to a bystander was an ad hoc decision, and no evidence was presented that "anyone of authority weighed any social, economic, or political policies before lifting the barricade"); *A. Doe v. Cedar Rapids Cmty. Sch. Dist.*, 652 N.W.2d 439, 442 (Iowa 2002) (finding school's decision to hire, retain, and supervise a teacher lacked broader policy considerations that the legislature intended to insulate from liability); *City of Cedar Falls*, 617 N.W.2d at18–19 (finding discretion function immunity inapplicable for the negligent death of a student as the supervising teacher's judgments did not involve broader considerations of public policy).

entitled to immunity under the discretionary function exception. Our review of the record reveals the university had a policy to continue the normal hours of operation for the library during periods of severe weather. The purpose of keeping the library open was to afford the maximum opportunity for students and staff to utilize the library facilities. Keeping the library open furthered the public policy of providing the best college education to its students at a reasonable cost. Persons who desired to use the library for studying or research needed to count on the fact the library would be available to them during its normal hours of operation, except when it would be impossible to keep it open those hours.

Here, the decisions surrounding the operation of the dredge and the placement of warning markers around the dredge were not based on "ad hoc" decisions or day-to-day activities of the business of government, but were based on broader public policy considerations. The State has "demonstrate[d] that when it exercised its judgment, it genuinely could have considered and balanced factors supported by social, economic, or political policies." *Id.*[4]

The State's consideration of public policy factors is demonstrated by the testimony of the State officials who dealt with the permitting and operation of the dredge. Mike McGhee, the project manager for the Lake Restoration Program at Storm Lake,[5] testified that "dredging is one of the components that we're using to

---

[4] Our ruling in this case is also supported by federal precedent. *See e.g.*, *Harrell v. U.S.*, 443 F.3d 1231, 1236–37 (10th Cir. 2006) (finding discretionary immunity applied for the Coast Guard's placement and service of a buoy because these decisions were policy based); *Holmes v. Parker*, No. CV 211-111, 2013 WL 831416, at *4 (S.D. Ga. Mar. 6, 2013) (finding decisions surrounding the placement and maintenance of navigational aids on a rocky jetty were policy based discretionary decisions); *Winston v. Jackson Cnty. Conservation Bd.*, No. C99-1013MJM, 2001 WL 34152073, at *1 (N.D. Iowa Sept. 26, 2001) *aff'd*, 36 F. App'x 572 (8th Cir. 2002) (finding discretionary function immunity applicable where swimmer in county government operated lake was injured by a boater; "it is clear that the Board could have considered a wide range of policy factors in making its decisions regarding supervision of the Lake; thus, "whether or not it actually did so is immaterial").

[5] The Lake Restoration Program is a DNR statewide initiative, and McGhee also serves as its Coordinator.

achieve our water quality goals at Storm Lake." The DNR provides funds for the yearly operation of the dredge and the local organization, the LIC, owns and operates the dredge. Julie Sievers, a DNR environmental specialist who primarily focuses on public drinking water systems and is the DNR representative[6] to the LIC, testified the dredging of Storm Lake improves the water quality of the lake and thus improves fisheries. Siever's role in reviewing the dredging plan each year is to ensure water quality, shoreline preservation, and proper spoil site deposit. DNR Officer Brent Koppie provided testimony concerning the operation and safety measures associated with the dredge.[7] Koppie, as a DNR officer, noted he had the authority to suggest changes for the dredge operation if he felt it was interfering with the navigation of the lake, and had done so on two occasions in the past.[8] Since the dredge is operating pursuant to the dredge permit, Koppie testified he did not have the authority to actually stop the dredge operation. Koppie stated he expected all boaters to be aware of the purpose and configuration of buoys in the lake. He noted, "So I guess in my opinion the vast majority of individuals, regardless of their education level, their experience level, would see several buoys as an indication of a hazard." Signs were placed at every Storm Lake boat ramp warning boaters of the dredge pipe. The buoys were placed approximately 100 yards apart, and

---

[6] Sievers serves as an ex officio member of the LIC. She does not have the authority to vote on the LIC's actions, and operates in an advisory capacity to the LIC.

[7] Koppie also provides assistance in determining if sovereign land is being encroached upon by construction and if a permit is required for work done on sovereign land. In his position, Koppie did not take part in the granting of the LIC's dredging permit.

[8] Koppie testified he recalled one other accident involving the dredge pipe. In that incident, a boater struck the dredge pipe and tore the motor from the boat.

were affixed to seams in the dredge pipe. Koppie stated he did not have concerns with the placement or number of buoys.

Based on the record, we find the State "genuinely could have considered and balanced factors supported by social, economic, or political policies." *Id.* Therefore, we find the district court did not err in finding the State immune from liability pursuant to the discretionary function exception.

### B.     Public Duty Doctrine

The estate claims the district court erred in finding the "public duty doctrine" precludes the estate's claim against the State. Specifically, the estate claims the court erred by focusing solely on statutory duties of care and not also on common law duties of care, including: a failure to train employees, negligence in failing to properly supervise and control the dredging operation. The estate also asserts the common law theory of premises liability should apply.

The district court held, and we affirmed, the State was entitled to immunity under the discretionary function exception regarding the issuance and renewal of the permit for the dredging operation and any decision concerning the implementation of safety measures surrounding the dredge. As a result, we only consider the estate's claims concerning the operations of the dredge, which is governed by statute.

"In determining whether a defendant owes a legal duty to a plaintiff, three factors usually control: (1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations." *Raas v. State*, 729 N.W.2d 444, 448 (Iowa 2007). The State

claims the public duty doctrine precludes its liability in this case. The doctrine provides "if a duty is owed to the public generally, there is no liability to an individual member of that group." *Kolbe v. State*, 625 N.W.2d 721, 729 (Iowa 2001) (ruling State owed no duty to plaintiff bicyclist when it issued a driver's license to third party whose vehicle struck plaintiff).

> We have routinely held that a breach of duty owed to the public at large is not actionable unless the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the State and the injured plaintiff consistent with the rules of Restatement (Second) of Torts section 315.

*Id.* The district court found the State did not have a "special duty" to the estate; we agree. As the district court stated:

> Therefore, the Court finds any duty owed to enforce statutory, violations against the dredge operators was owed to the general public, just as the duty to enforce the rules of the road against dangerous drivers are owed to the public in general. Plaintiffs frame their argument around the failure of the State to enforce statutory violations against the dredge operators. Plaintiffs particularly cited section 461A.55 in paragraph 26(b) of their Petition, which prohibits the placing of dredge equipment so as to endanger other users of the water. Paragraph 26(c) alleges the State allowed the dredge pipe to be concealed, which is also a statutory violation of section 461A.55. Finally, paragraph 26(c) plainly alleges the State allowed the dredging equipment to endanger Plaintiffs, which is also a violation of section 461A.55. This statute is imposed against the operators of the dredge and is punishable as a simple misdemeanor—much like rules of the road are imposed against drivers on the road.
> . . . .
> Plaintiffs are not part of a specialized class to which the State owed a duty; instead, they are part of the general public that has an "inviolable right" to access the lake. *See Kolbe v. State*, 625 N.W.2d 721, 728 (Iowa 2001) (denying plaintiffs' argument that they were part of a specialized class as "the rightful users of the road"). To establish a duty owed by the State to third parties for the failure to enforce criminal violations against other operators on the waters of Storm Lake would create a "limitless interpretation which would subject the State, and its limited resources, to limitless

liability" for every accident that occurs between two private vessels on sovereign water.

We find the district court was correct in finding the public duty doctrine precludes the estate's claim against the State.

## C. Private Cause of Action

The estate claims the district court erred in finding the statutes the estate cited (located in Iowa Code chapters 461A and 462A) do not create a private cause of action because these statutes can be used to show negligence or negligence per se.

"In order for a negligence claim to lie for violation of a statutory duty, such provision must be made, either explicitly or implicitly, by the statute. In the absence of such a provision, the violation of a statutory duty does not give rise to a private cause of action." *Marcus v. Young*, 538 N.W.2d 285, 288 (Iowa 1995) (citation omitted). If the statute does not explicitly create a private cause of action, the question is then can a private cause of action be implied in the statute. *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 38 (Iowa 1982). In answering this question, Iowa has adopted a four-factor test established by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78 (1975). See *id.*

> 1. Is the plaintiff a member of the class for whose benefit the statute was enacted?
> 2. Is there any indication of legislative intent, explicit or implicit, to either create or deny such a remedy?
> 3. Would allowing such a cause of action be consistent with the underlying purpose of the legislation?
> 4. Would the private cause of action intrude into an area over which the federal government or a state administrative agency holds exclusive jurisdiction?

*Id.* (citing *Cort v. Ash*, 422 U.S. at 78).

After analyzing the relevant statutes, the district court applied this test in the present case and concluded:

> [T]he Court holds the legislature did not intend for any of the cited sections within Chapters 461A or 462A to provide a private remedy. Additionally, if the Court refuses to imply a cause of action for statutory violations, the Court likewise refuses to imply a tort arises from violation of administrative rules enacted to carry out statutory directives. *See Kolbe*, 625 N.W.2d at 726.

We find the district court properly refused to imply a cause of action from chapters 461A and 462A.

### D. Recreational Use Statute

This issue was raised below, but the district court did not reach this issue in its opinion. Error was not preserved on this issue. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.*

## IV. CONCLUSION

We find the district court did not err in granting summary judgment to the State. The discretionary function immunity exception precludes the estate's negligence claims based on the State's enforcement of statutes concerning the dredge operation and the State's duty to properly warn boaters of the dredge. The public duty doctrine precludes the estate's claim, as the State did not owe a "special duty" to the estate. A private remedy does not exist against the State,

pursuant to Iowa Code chapters 461A and 462A. Finally, error was not preserved on the recreational use statute, and in the alternative, the statute is inapplicable to this case. We affirm.

**AFFIRMED.**