WIGGINS, Justice (dissenting).
I. The Public-Duty Doctrine.
The majority decides this case based on the public-duty doctrine. This doctrine provides, "[I]f a duty is owed to the public generally, there is no liability to an individual member of that group." Kolbe v. State , 625 N.W.2d 721, 729 (Iowa 2001) (en banc) (quoting Wilson v. Nepstad , 282 N.W.2d 664, 667 (Iowa 1979) ). However, if "the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the [s]tate and the injured plaintiff consistent with the rules of Restatement (Second) of Torts section 315 [,]" then the breach of duty owed to the public at large is actionable. Id. (emphasis omitted).
Restatement (Second) of Torts section 315 provides,
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
Restatement (Second) of Torts § 315 (Am. Law Inst. 1965).
I now turn to Estate of McFarlin v. State , 881 N.W.2d 51 (Iowa 2016), a 4-3 decision that largely forms the basis of the majority's decision in this case.
A. Estate of McFarlin Does Not Apply to This Case. In Estate of McFarlin , a boy riding in a speedboat died when the driver steered the speedboat at thirty miles per hour between two danger buoys and struck a submerged dredge pipe. 881 N.W.2d at 53. The state owned the lakebed of Storm Lake, where the accident occurred, and allowed the public to use the lake. Id. The state was not responsible for the day-to-day operations of the dredge pipe. Id. at 54. In applying the public-duty doctrine, the majority reasoned the plaintiffs did not belong to a particularized, identifiable class because Storm Lake was open to the public and all members of the *268 public were free to use it. Id. at 62. The majority refused "to limit the public-duty doctrine merely because the claim arose in a confined geographic area such as a public lake." Id.
On the contrary, the dissent reasoned the state owed a duty not to the members of the public but "only to the boaters on Storm Lake who were exposed to a risk of serious injury or death from the submerged dredge pipe." Id. at 68 (Hecht, J., dissenting). The dissent further reasoned "the risk allegedly created by the [s]tate and its dredging agents endangered a limited universe of people at a specific location." Id. It was irrelevant that local entities, not the state, owned and operated the dredge pipe because the state nevertheless controlled the prescribing terms for the dredging activity through the permitting process. See id. at 70 & n.10. Moreover, the state through its nonperformance created the very specific risk of physical injury or death to boaters, and thus "the [s]tate's involvement in creating such a risk justifies our recognition of an affirmative duty in this case." Id.
I think the dissent in Estate of McFarlin correctly found an affirmative duty on the part of the state. Likewise, in the instant case, I cannot reach the same outcome as the majority even if the public-duty doctrine applies because I find an affirmative duty on the part of the County.
The County has a statutory obligation to remove the concrete embankment in the ditch pursuant to Iowa Code section 318.4, yet the County failed to do so. Section 318.4 provides, "The highway authority shall cause all obstructions in a highway right-of-way under its jurisdiction to be removed." Iowa Code § 318.4 (2013) (emphasis added).
Section 37 of the Restatement (Third) of Torts provides, "An actor whose conduct has not created a risk of physical ... harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 37, at 2 (Am. Law Inst. 2012) [hereinafter Restatement (Third) ].
Section 38 of the Restatement (Third) provides, "When a statute requires an actor to act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and to determine the scope of the duty." Id. § 38, at 21. Furthermore, comment c of section 38 provides,
When the legislature has not provided a [private cause of action], but the interest protected is physical ... harm, courts may consider the legislative purpose and the values reflected in the statute to decide that the purpose and values justify adopting duty that the common law had not previously recognized.
Id. § 38 cmt. c , at 22.
At first glance, the language of Iowa Code section 318.4 reflects a nonactionable duty owed to the public. However, I would find an affirmative duty owed by the County to the plaintiff Kaitlyn Johnson and a special relationship between Johnson and the County. I refer to an instructive case to illustrate my point.
In Irwin v. Town of Ware , the Supreme Judicial Court of Massachusetts addressed the issue of whether police officers of the town owed the plaintiffs a duty to remove an intoxicated motorist from the roadways. 392 Mass. 745, 467 N.E.2d 1292, 1299 (1984). Specifically, the court phrased the issue as "whether the standard of care owed to the general public by the town through its police officers in the instant case implies a ... special relationship." Id. at 1302. The town argued the officers owed this duty to the public only, and thus the *269 plaintiffs could not maintain a private negligence action against it for harm caused by the officers' failure to remove the intoxicated motorist from the roadways. Id. at 1299.
In rejecting the town's argument, the court reasoned the applicable statutes providing for the duties of the police give rise to a special relationship. Id. at 1302-03. The court first observed the relevant statutes gave the officers certain privileges and rights, such as the right to arrest an intoxicated person without a warrant. Id. at 1302. The court then observed some of the relevant statutes required the police to act, such as mandating officers to prevent disturbances. Id. The court therefore reasoned, "[The] police can be found to be in neglect of statutory responsibilities by mere failure to act when confronted by an intoxicated driver." Id. (emphasis added). In finding an affirmative duty owed to the plaintiffs, the court concluded, "[T]here is a special relationship between a police officer who negligently fails to remove an intoxicated motorist from the highway, and a member of the public who suffers injury as a result of that failure." Id. at 1303-04. Specifically, based on its interpretation of the statutes establishing police responsibilities, the court concluded the legislature intended "to protect both intoxicated persons and other users of the highway." Id. at 1304.
Here, the language of Iowa Code section 318.4 is mandatory. Again, section 318.4 provides, "The highway authority shall cause all obstructions in a highway right-of-way under its jurisdiction to be removed." Iowa Code § 318.4 (emphasis added). Similar to the applicable statutes in Irwin requiring action on the part of the police, section 318.4 leaves no room for discretion on the part of the highway authority. Specifically, this section requires the highway authority to remove all obstructions in a right-of-way. I would therefore find the County owes an affirmative duty to an identifiable class of persons exposed to a risk of physical harm from obstructions on the highway right-of-way and harmed by its failure to comply with the statutory requirement of section 318.4. The County has the authority to order the removal of the concrete embankment but it has not done so despite the mandatory language of section 318.4.
Notably, section 318.4 does not specify that the highway authority must remove all obstructions only in the traveled portion of the right-of-way. Section 318.1 defines "highway right-of-way" as "the total area of land, whether reserved by public ownership or easement , that is reserved for the operation and maintenance of a legally established public roadway." Id. § 318.1(3) (emphasis added). This section further provides, "This area shall be deemed to consist of two portions, a central traveled way including the shoulders and that remainder on both sides of the road, between the outside shoulder edges and the outer boundaries of the right-of-way ." Id. (emphasis added). It is irrelevant that the concrete embankment is not in the traveled portion of the right-of-way. The legislature has broadly defined right-of-way to include the untraveled portion of the total area constituting a public roadway.
I note the distinction between nonfeasance and misfeasance is artificial in practice. In practice, the result is the same, whether the County committed misfeasance by affirmatively erecting the concrete embankment or whether the County committed nonfeasance by failing to remove the concrete embankment when it was under an affirmative duty to do so. The public-duty doctrine does not apply because the County owed an affirmative duty to Johnson, regardless of whether the *270 majority packages the duty in terms of nonfeasance or misfeasance.
Additionally, a special relationship exists between Johnson and the County. Section 40(b)(3) of the Restatement (Third) states "a business or other possessor of land that holds its premises open to the public with those who are lawfully on the premises" owes a duty of reasonable care. Restatement (Third) § 40(b)(3), at 39 (emphasis added). It is an undisputed fact that the County has a right-of-way easement across the concrete embankment. Thus, because the County is an easement holder, it is a possessor of land. See id. § 49 cmt. d , at 226 ("Possession of land may be divided among several actors.... In such cases, each actor has the duty provided in this Chapter with respect to the portion of the premises controlled by that actor."). The County could have ordered the removal of the concrete embankment because it "has the authority and ability to take precautions to reduce the risk of harm to entrants on the land." Id. § 49 cmt. c , at 225. The majority concedes as much. Because the County fits comfortably within the definition of possessor of land, which is one of the special relationship categories listed in section 40(b), I would find there is a special relationship between Johnson and the County.
B. The Public-Duty Doctrine Conflicts with Our Legislature's Enactment of the Iowa Tort Claims Act (ITCA) and the Iowa Municipal Tort Claims Act (IMTCA). The public-duty doctrine is a form of judicially created sovereign immunity and is at odds with the legislature's clear intent in limiting the scope of sovereign immunity. Adam v. State , 380 N.W.2d 716, 724 (Iowa 1986) (en banc) (noting the public-duty doctrine is clearly incompatible with the ITCA).
We cannot search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear. Thompson v. Kaczinski , 774 N.W.2d 829, 832 (Iowa 2009). We give words in the statute their ordinary and common meaning absent a statutory definition or an established meaning in the law. See id. at 832-33. When the explicit terms of a statute are ambiguous, we resort to the rules of statutory construction. Id. at 833. "[I]f reasonable minds could differ or be uncertain as to the meaning of the statute[,]" there is ambiguity in the statute. Id. (quoting Carolan v. Hill , 553 N.W.2d 882, 887 (Iowa 1996) ).
In determining legislative intent, we take into account "not only the language of the statute, but also its subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of various interpretations." State v. Albrecht , 657 N.W.2d 474, 479 (Iowa 2003). We glean legislative intent from the words the legislature has chosen, not what we think it should or would have said. Fagen v. Grand View Univ. , 861 N.W.2d 825, 834 (Iowa 2015). Additionally, we cannot "extend, enlarge[,] or otherwise change the meaning of a statute" under the guise of construction. Auen v. Alcoholic Beverages Div. , 679 N.W.2d 586, 590 (Iowa 2004). Lastly, to give effect to the legislature's intent, we must examine and interpret the statute as a whole rather than solely engage in a piecemeal analysis. Rojas v. Pine Ridge Farms, L.L.C. , 779 N.W.2d 223, 231 (Iowa 2010). I now turn to the relevant statutes.
The ITCA provides, "The state shall be liable in respect to [negligence] claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances...." Iowa Code § 669.4. Thus, in making the state liable for negligence as if the state was a private actor, the ITCA abrogates sovereign *271 immunity, with some express exceptions codified in section 669.14. See id. § 669.14. Similar to the ITCA, the IMTCA provides, "Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties...." Id. § 670.2. Thus, in making governmental subdivisions liable for negligence, the IMTCA abrogates sovereign immunity, with some express exceptions codified in section 670.4. See id. § 670.4.
The public-duty doctrine creates immunity where the legislature has not done so. The language of the ITCA and the IMTCA is clear. The legislature has not codified the public-duty doctrine as an exception in section 669.14. Id. § 669.14. Nor has the legislature included the public-duty doctrine as one of the exceptions to the waiver of immunity in section 670.4. Id. § 670.4. We should therefore exercise judicial restraint and refrain from engrafting the public-duty doctrine onto the respective statutes.
Additionally, we stated in Kolbe that the state "shares the same-but not greater-liability to injured parties as other defendants under like circumstances." 625 N.W.2d at 730 (quoting Sankey v. Richenberger , 456 N.W.2d 206, 209 (Iowa 1990) ). This statement cuts both ways: the state or governmental subdivisions share the same-but not lower-liability to victims as other private actors in similar situations.
A number of jurisdictions have been joining the trend of rejecting or at least limiting the public-duty doctrine. See Estate of McFarlin , 881 N.W.2d at 66 & n.8 (collecting cases); see also Wilson , 282 N.W.2d at 667 ("[T]he trend in this area is toward liability."). Moreover, in Iowa, we have narrowed the application of the doctrine. See Kolbe , 625 N.W.2d at 729. We have also either addressed or doubted the continued viability of the doctrine in Wilson , 282 N.W.2d at 667-69, and in Adam , 380 N.W.2d at 724. I agree with the dissent in Estate of McFarlin that the characterization of the doctrine as "alive and well" in Raas v. State , 729 N.W.2d 444, 449 (Iowa 2007), was "inapt." Estate of McFarlin , 881 N.W.2d at 67.
Lastly, the public-duty doctrine is "confusing and inconsistent." Hudson v. Town of E. Montpelier , 161 Vt. 168, 638 A.2d 561, 568 (1993). For example, we declined to apply the public-duty doctrine when the victim belonged to an identifiable class, such as "all those rightfully using the roads" in Lee County, Harryman v. Hayles , 257 N.W.2d 631, 638 (Iowa 1977), overruled on other grounds by Miller v. Boone Cnty. Hosp. , 394 N.W.2d 776, 781 (Iowa 1986), abrogated by Estate of McFarlin , 881 N.W.2d at 61 n.6, and "the traveling public" in Scott County, Symmonds v. Chi., Milwaukee, St. Paul & Pac. R.R. , 242 N.W.2d 262, 265 (Iowa 1976), abrogated by Estate of McFarlin , 881 N.W.2d at 61 n.6. In Estate of McFarlin , we stated in dictum that "[w]e no longer recognize county-wide special classes of motorists after Kolbe ." 881 N.W.2d at 61 n.6 (majority opinion). Yet we neither explicitly stated nor implicitly hinted at such a notion in Kolbe .
I disagree with Estate of McFarlin 's characterization that Kolbe abrogated Harryman and Symmonds . The dictum in Estate of McFarlin simplifies and overlooks the context in which we decided Kolbe and fails to look at the broader legal principle behind it. In Kolbe , a motorist with impaired vision struck a bicyclist on a county road. 625 N.W.2d at 724. The plaintiffs-the bicyclist and his wife-filed suit against the state, alleging the state negligently issued driving privileges to the motorist despite knowledge of his impaired *272 vision. Id. at 724-25. We considered the issue of whether the state owed a duty to the plaintiffs when it issued a driver's license to the motorist. Id. at 728. Answering in the negative, we reasoned the legislature enacted the licensing statute for the benefit of the public at large. Id. at 729. We also reasoned the plaintiffs did not claim a special relationship with the state arising out of the unique or particularized facts of the case. Id. at 730. In affirming summary judgment in favor of the state, we applied the public-duty doctrine and held the state did not owe a duty to the plaintiffs. See id. at 729-30.
My takeaway from Kolbe is that the question of whether a plaintiff belongs to a particularized class is a fact-based analysis taking into account the unique circumstances of each case. In sum, I find the triad of Harryman , Symmonds , and Kolbe , all of which dealt with classes of motorists, solidifies the notion that the public-duty doctrine "is confusing" and results in "unpredictable" outcomes. See Hudson , 638 A.2d at 566.
II. Conclusion.
For the foregoing reasons, I respectfully dissent. I would reverse the district court's grant of summary judgment to the County.
Hecht and Appel, JJ., join this dissent.