# IN THE SUPREME COURT OF IOWA

No. 16–1896

Filed June 8, 2018

**KAITLYN JOHNSON,**

Appellant,

vs.

**HUMBOLDT COUNTY, IOWA,**

Appellee.

_____

Appeal from the Iowa District Court for Humboldt County, Kurt J. Stoebe, Judge.

A passenger who was injured in a single-vehicle accident that occurred when the vehicle left a county highway, entered a ditch, and struck a concrete embankment appeals the district court's grant of summary judgment to the county. **AFFIRMED.**

Conrad F. Meis of Buchanan, Bibler, Gabor, and Meis, Algona, and Michael K. Bush and John C. Bush of Bush, Motto, Creen, Koury & Halligan, P.L.C., Davenport, for appellant.

Rene Charles Lapierre and Ryland Deinert of Klass Law Firm, L.L.P., Sioux City, for appellee.

Joel E. Fenton of Law Offices of Joel E. Fenton, PLC, Des Moines, and Jessica A. Zupp, Denison, for amicus curiae Iowa Association of Justice.

Thomas M. Boes and Catherine M. Lucas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for amici curiae Iowa League of Cities, Iowa Defense Counsel Association, Iowa State Association of County Supervisors, and Iowa Municipal Utilities Association.

**MANSFIELD, Justice.**

### I. Introduction.

This case involves a single-vehicle accident that occurred when a vehicle went off a county road and into a ditch, then struck a concrete embankment in the ditch. The embankment had been constructed by a private landowner. It was on the private landowner's land, although the county had a right-of-way easement where part of the embankment was located.

A passenger in the vehicle sustained serious injuries. She sued the county and the current landowner seeking recovery. She alleged the county should have caused the removal of the concrete embankment from the ditch. The district court denied summary judgment to the landowner but granted it to the county based on the public-duty doctrine. The plaintiff appealed.

On our review, we are guided by our recent decision in *Estate of McFarlin v. State*, 881 N.W.2d 51 (Iowa 2016). There we held that the public-duty doctrine barred a claim against the State of Iowa relating to the placement of and lack of warnings on a dredge pipe in a recreational lake owned and managed by the state. *Id.* at 58. A boater struck the dredge pipe, resulting in fatal injuries to one of the boat's passengers. *Id.* at 53. *Estate of McFarlin* reaffirmed our earlier public-duty precedents and also held that the doctrine remains good law under the Restatement (Third) of Torts: Liability for Physical and Emotional Harm. *Id.* at 60. Based on *Estate of McFarlin*, we affirm the district court's grant of summary judgment.

### II. Facts and Procedural Background.

At approximately 2:30 a.m. on March 3, 2013, David Helmers and Kaitlyn Johnson, who at that time was Helmers's spouse, were traveling

on a county road in Humboldt County in a Chevy Silverado pickup. Helmers was driving. He fell asleep at the wheel, and the vehicle crossed the other side of the road and then veered into a roadside ditch. Helmers never applied the brakes, and the vehicle continued in the ditch for over 200 feet before it struck a concrete embankment in the ditch. Johnson suffered serious injuries in the accident, including paralysis and brain damage. The car was traveling approximately 58 miles per hour when it hit the embankment.

The embankment had been built by Donald Becker and his father-in-law in 1972. It was part of a cattle grid that allowed people and their vehicles, but not livestock, to cross the ditch at that spot. The embankment and the grid were entirely on the Beckers' private property, although most of the embankment fell within the county's right-of-way easement relating to the road.

On December 31, 2014, Johnson filed suit against Humboldt County and the current landowners, Donald and Sandra Becker. Johnson alleged that the County was negligent in failing to cause the removal of the embankment. She relied on general negligence principles, premises liability, public nuisance, and Iowa Code sections 670.2 and 318.4. *See* Iowa Code § 670.2 (2013) ("Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties . . . ."); *id.* § 318.4 ("The highway authority shall cause all obstructions in a highway right-of-way under its jurisdiction to be removed.").

An initial summary judgment motion filed by the County was denied. Later, the County filed a second motion for summary judgment, specifically raising the public-duty doctrine.

Following a hearing, the district court granted the County's second motion on September 23. The court reasoned that Johnson's claims against the County arising out of this incident were barred by the public-duty doctrine, which does not allow individuals to sue the government for breach of a duty owed to the public at large. As the court explained,

> The Iowa Supreme Court has often found, consistent with the common law public duty doctrine, that a breach of duty owed to the public at large is not actionable unless the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the municipality and the injured plaintiff consistent with the rules of Restatement (Second) of Torts, Section 315. . . . Further, given the State's adoption of the Restatement (Third), the Iowa Supreme Court recently held 'the public-duty doctrine remains good law after our adoption of the Restatement (Third) of Torts.' *Estate of McFarlin v. State*, 881 N.W.2d 51, 60 (Iowa 2016). Therefore, the public duty doctrine remains good law in Iowa, despite the State's adoption of the Restatement (Third).
>
> The pivotal issue in this case is whether the duty owed by Humboldt as the highway authority to remove obstructions in highway right-of-ways, a duty owed to the public at large, could also be construed as a duty to Johnson as a member of a special identifiable class. Based on a plain language reading of Section 318.4, it is clear that the statute does not identify Johnson as a member of a special protected class. Simply stated, Johnson did not have a common law special relationship with Humboldt that could support a finding of duty. . . .
>
> . . . .
>
> Section 318.4 charges Humboldt with a duty to protect the general users of Iowa roadways from obstructions in the highway right-of-ways. Since the Iowa Supreme Court has clearly found motorists to be a general class that is not afforded a special relationship with the State, all of Johnson's allegations stemming from Humboldt's failure to perform its duties under Section 318.4 are not actionable. Therefore, Humboldt's Motion for Summary Judgment is granted.

Johnson appealed, and we retained the appeal.

### III. Standard of Review.

"We review a district court's ruling on summary judgment for correction of errors at law." *Estate of McFarlin*, 881 N.W.2d at 56 (quoting *Thomas v. Gavin*, 838 N.W.2d 518, 521 (Iowa 2013)). "The evidence is viewed in the light most favorable to the nonmoving party." *Id.* (quoting *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012)).

### IV. Analysis.

**A. The Public-Duty Doctrine.** "Under the public-duty doctrine, 'if a duty is owed to the public generally, there is no liability to an individual member of that group.' " *Id.* at 58 (quoting *Kolbe v. State*, 625 N.W.2d 721, 729 (Iowa 2001)). "[A] breach of duty *owed to the public at large* is not actionable *unless the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the* [*governmental entity*] *and the injured plaintiff . . . .*" *Kolbe*, 625 N.W.2d at 729. We have applied this doctrine on various occasions to preclude tort claims by individuals against the government.

In *Kolbe*, we held that the doctrine precluded a negligence claim against the state for its issuance of a driver's license to a driver with a congenital visual impairment. *Id.* at 729–30. The driver struck a bicyclist, severely injuring him. *Id.* at 724. We rejected the bicyclist's assertion that the state owed him a duty as a member of a "particularized class—rightful users of the Iowa roads." *Id.* at 728, 729–30. We found instead that the licensing provisions in chapter 321 of the Iowa Code were for the benefit of the public at large and thus the plaintiff could not "avoid the preclusive effect of the public duty doctrine by claiming membership in a special, identifiable group for whose benefit the statutes were enacted." *Id.* at 729–30.

In *Summy v. City of Des Moines*, we again examined the public-duty doctrine, this time finding that it did not apply based on the facts of that case. 708 N.W.2d 333, 344 (Iowa 2006), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016). In *Summy*, a golfer who was golfing on a city-owned golf course was struck by an errant golf ball. *Id.* at 335. He challenged the design of the golf course, alleging there was an unreasonable danger that a golfer playing the eighteenth hole would be struck by tee shots from the first hole. *Id.* at 336. We held the public-duty doctrine did not apply because the duty at issue "was one owed to invitees on the golf course, not to the public at large." *Id.* at 344.

In *Raas v. State*, we considered the public-duty doctrine in the context of claims brought by two individuals who were injured by inmates who had escaped from the Iowa Medical and Classification Center in Oakdale. 729 N.W.2d 444, 446 (Iowa 2007). One of the individuals was attacked while in the parking lot of the facility; the other while fishing in the Iowa River some distance away. *Id.* at 446. We found that the plaintiff who was "lawfully in the parking lot of the Oakdale Facility . . . that day during the regularly scheduled visiting hours" had status "as an invitee," so the public-duty doctrine did not apply. *Id.* at 450. The other plaintiff's claim, however, was subject to the public-duty doctrine, as he was "only a member of the public at large." *Id.* We emphasized that the public-duty doctrine was "alive and well in Iowa." *Id.* at 449.

Most recently, in *Estate of McFarlin*, we again reexamined and applied the doctrine. 881 N.W.2d at 64 (affirming the district court's grant of summary judgment based on the doctrine). We found that the plaintiffs' claims arising out of a boating accident in which a boat struck a submerged dredge pipe on a state-owned and state-managed lake were

precluded by the doctrine. *Id.* at 53, 64. We found *Kolbe* rather than *Summy* to be the relevant precedent:

> Golfers pay to use the Waveland Golf Course as business invitees. The city was both landowner and proprietor operating Waveland as a business for paying customers. Golfers proceed through the course in small groups, hole-by-hole in sequence. Members of the general public are not allowed to wander freely around Waveland while golfers are playing. By contrast, Storm Lake is open to the public free of charge. Boaters may traverse the lake freely and come and go as they please, like motorists using public roads. . . .

> This case is more like *Kolbe* than *Summy.* In *Kolbe,* we applied the public-duty doctrine to affirm summary judgment for the state, dismissing tort claims alleging the department of transportation (DOT) negligently issued a drivers' license to a visually impaired driver . . . . Five days after Schulte's license was reissued, he was driving on a county road and struck a bicyclist, Charles Kolbe, inflicting severe injuries. Kolbe sued the State, alleging that it "negligently and without adequate investigation issued driving privileges" to Schulte despite knowledge of his impaired vision. Kolbe claimed Iowa Code chapter 321 created a particularized class—"rightful users of the Iowa roads." The district court granted the state's motion for summary judgment. In affirming the summary judgment on the public-duty doctrine, we held the requisite special relationship was lacking because "the licensing provisions in Iowa Code chapter 321, and more specifically Iowa Code section 321.177(7), are for the benefit of the public at large." We reach the same conclusion as to the DNR's role at Storm Lake. Boaters at Storm Lake, like motorists driving on Iowa roadways, are members of the general public, not a special class of "rightful users of the lake" for purposes of the public-duty doctrine.

*Id.* at 60–61 (footnote omitted) (citations omitted) (quoting *Kolbe,* 625 N.W.2d at 724–25, 728, 729). In short, boaters using a lake that is open to the public for recreational purposes would be considered members of the public at large, not a special class.

In light of these precedents, the public-duty doctrine appears to control this case. Any duty to remove obstructions from the right-of-way corridor adjacent to the highway would be a duty owed to *all* users of this

public road.  It would thus be a public duty.  *See id.* at 61–62; *Kolbe,* 625 N.W.2d at 728–30.  Just as boaters on Storm Lake are members of the general public, so are persons who use the county road.  *See Estate of McFarlin,* 881 N.W.2d at 61–62.  Furthermore, Iowa Code section 318.4 does not alter the analysis.  Johnson does not claim she has a private right of action under this law.  *Cf. id.* at 58 (rejecting a private right of action under statutes relating to state-owned bodies of water and dredging); *Kolbe,* 625 N.W.2d at 727 (finding no private right of action under driver licensing statutes and regulations).  Thus, section 318.4 would not affect the public-duty determination unless it was enacted for the benefit of a "particularized class."  *Cf. Kolbe,* 625 N.W.2d at 728–29.  Users of the public roads, however, are not such a class.  *Id.* at 729–30.[1]

Nevertheless, Johnson argues that the public-duty doctrine does not apply here for several reasons.  We will now turn to these contentions.

**B. The Public-Duty Doctrine and the Restatement (Third) of Torts**.  Initially, Johnson argues that the public-duty doctrine did not survive our adoption of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm.  There are two problems with this argument: we have said otherwise, and the Restatement (Third) has said otherwise.

In *Estate of McFarlin,* we specifically addressed whether the public-duty doctrine retains its previous vitality under the Restatement (Third).  881 N.W.2d at 59–60.  We determined that "the public-duty doctrine

---

[1]In *Kolbe,* we specifically distinguished *Adam v. State,* 380 N.W.2d 716 (Iowa 1986), because "the statute at issue in *Adam* was not for the benefit of the general public but rather 'was for the benefit of the class to which plaintiffs belong[ed]—producers doing business with grain dealers.' "  *Kolbe,* 625 N.W.2d at 729 (alteration in original) (quoting *Adam,* 380 N.W.2d at 723).

remains good law after our adoption of sections of the Restatement (Third) of Torts." *Id.* at 60.

As we pointed out in *Estate of McFarlin*, the reporters' note to section 7 of Restatement (Third)—the general duty provision—recognizes the public-duty doctrine. *Id.* at 59–60 (quoting the note); *see* Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 reporters' note cmt. *g*, at 93–94 (Am. Law Inst. 2010) [hereinafter Restatement (Third)]. This is reaffirmed in a comment to section 37 of the Restatement (Third):

> The limitless potential liability that might be visited on government entities if affirmative duties were imposed on them for every undertaking has influenced courts in limiting the existence and scope of affirmative duties to which government entities are subject. Some courts insist on a "special relationship" between the plaintiff and a public entity that distinguishes the plaintiff from the public at large before imposing an affirmative duty.

Restatement (Third) § 37 cmt. *i*, at 7 (Am. Law Inst. 2012).

Johnson argues that *Estate of McFarlin* failed to consider the fact that Restatement (Third) section 14 has superseded Restatement (Second) of Torts section 288. The latter section was entitled, "When Standard of Conduct Defined by Legislation or Regulation Will Not Be Adopted," and provided in part,

> The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively
>
> . . . .
>
> (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public . . . .

Restatement (Second) of Torts § 288, at 29 (Am. Law Inst. 1965).

Restatement (Third) section 14 is entitled "Statutory Violations as Negligence Per Se," and states,

> An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect.

Restatement (Third) § 14, at 154. Thus, Johnson insists that Restatement (Third) section 14 no longer openly embraces the public-duty doctrine.

Yet Johnson overlooks a key point. A goal of the Restatement (Third) was to clear away prior confusion between the duty determination and the negligence determination. *See* Restatement (Third) § 7 cmt. *i*, at 81–82. Section 288 of the Restatement (Second) conflated the two, by setting forth the public-duty rule within a negligence provision. *See* Restatement (Second) of Torts § 288(b); *see also Wilson v. Nepstad*, 282 N.W.2d 664, 671–72 (Iowa 1979) (applying Restatement (Second) of Torts § 288(b) to find the public-duty rule did not apply). Section 14 of Restatement (Third), on the other hand, is a negligence provision only, dealing with the question whether a statutory violation constitutes negligence per se. *See* Restatement (Third) § 14, at 154. Thus, comment *i* to section 14 indicates that the section "primarily applies when the issue is whether the actor's conduct is negligent—whether it lacks reasonable care." *See id.* cmt *i*, at 160. It does recommend the court "give appropriate weight" before it applies a no-duty rule when "the defendant has violated a statute that seeks to protect the plaintiff against a certain type of accident." *Id.* But this doesn't vitiate the public-duty rule where the statute as here protects the public generally.

On a related note, Johnson also directs us to the Restatement (Third) section 38, which provides, "When a statute requires an actor to

act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and to determine the scope of the duty." Restatement (Third) § 38, at 20–21.

Consider, though, the example provided in Illustration 2 to section 38, which describes a statute that "requires all public schools to test all students for scoliosis, an abnormal curvature of the spine." *Id.* cmt. *c,* illus. 2, at 22. A student is not tested, and as a result she suffers enhanced harm due to a delayed diagnosis. *Id.* The analogy is imperfect, because in that example the potential duty would be owed only to students attending a particular school, whereas here the duty would be owed to all users of a public road. Nonetheless, the Restatement concludes that "[t]he legislature's concern about preserving school districts' financial resources counsels against the court finding that [the school] had an affirmative duty to [the student] with regard to scoliosis testing." *Id.* at 22–23. In other words, one of the illustrations to Restatement (Third) section 38 actually bolsters *Estate of McFarlin*'s conclusion that the public-duty doctrine "remains good law." 881 N.W.2d at 60.

Finally, Johnson cites Restatement (Third) section 40(b)(3). This provision addresses the special relationship created when "a business or other possessor of land . . . holds its premises open to the public with those who are lawfully on the premises." Restatement (Third) § 40(b)(3), at 39. One problem with Johnson's position is that the County did *not* possess the land on which the concrete embankment was located. The County was not "a person who occupies the land and controls it." *Id.* § 49(a), at 224. The land in question belonged to the Beckers, and the County had only an easement.

**C. The Public-Duty Doctrine and the Iowa Municipal Tort Claims Act.** Johnson next contends the public-duty doctrine is not

available for claims brought under the Iowa Municipal Tort Claims Act, Iowa Code chapter 670. She maintains that because section 670.2 provides "every municipality is subject to liability for its torts," the County may not assert the public-duty doctrine to restrict its liability. *See* Iowa Code § 670.2.

However, Johnson erroneously equates *immunity* (as waived by the Iowa Municipal Claims Act) with the common law public-duty doctrine. *See Estate of McFarlin*, 881 N.W.2d at 59. We have said, "Unlike immunity, which protects a municipality from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable duty to the plaintiff in the first place." *Id.* (quoting *Raas*, 729 N.W.2d at 448). Because "[t]he public duty rule is not technically grounded in government immunity," the Iowa Municipal Tort Claims Act and the public-duty doctrine may coexist without conflict. *See Raas*, 729 N.W.2d at 448 (quoting 18 Eugene McQuillin, *McQuillin on Municipal Corporations* § 53.04.25 (3d ed. 2006)).

As Johnson concedes, we have effectively ruled on this issue. *See Kolbe*, 625 N.W.2d at 730. We determined in *Kolbe* that the public-duty doctrine was still viable, despite enactment of the Iowa Tort Claims Act, which partially abrogates the state's sovereign immunity in the same manner as the Municipal Tort Claims Act does for political subdivisions of the state. *See id.* at 725. We discussed the doctrine specifically in light of the Iowa Tort Claims Act and ultimately applied the doctrine to bar the plaintiff's claims. *Id.* at 729–30.

After *Kolbe*, we readdressed this issue in *Raas*, 729 N.W.2d at 449. We found "[o]ur cases decided after the adoption of the State Tort Claims Act continue[d] to recognize the public-duty doctrine, and . . . they . . . clearly upheld the continued validity of the doctrine." *Raas*, 729 N.W.2d

at 448–49 (listing cases). We concluded that despite the enactment of a tort claims statute that partially abrogated sovereign immunity—just as the Iowa Municipal Torts Claims Act does—the public-duty doctrine was nevertheless "alive and well in Iowa." *See id.* at 449.

Lastly, in *Estate of McFarlin*, we reaffirmed our rejection in *Raas* of the "argument that we should abandon the public-duty doctrine, as some other states have done, because the doctrine was supplanted by the enactment of tort claims statutes that partially abrogate sovereign immunity." *Estate of McFarlin*, 881 N.W.2d at 59.

**D. *Wilson v. Nepstad.*** Johnson also invokes a 1979 decision of this court—*Wilson v. Nepstad*, 282 N.W.2d 664. That case arose out of a fire in an apartment building that resulted in deaths and injuries. *Id.* at 666. The plaintiffs sued, inter alia, the City of Des Moines for negligently inspecting and permitting the building. *Id.* The city argued that "the applicable state and municipal inspection laws are designed to protect the public generally and do not create a duty of care to these individual plaintiffs." *Id.* at 667. A majority of the court signaled a potential shift away from the public-duty doctrine, indicating that

> a municipality is liable for tortious commissions and omissions when authority and control over a particular activity has been delegated to it by statute and breach of that duty involves a foreseeable risk of injury to an identifiable class to which the victim belongs.

*Id.* at 671. Regardless, in that case, the court found that the public-duty doctrine did not apply because the ordinances and statutes "were designed for the protection of a special, identifiable group of persons[,] lawful occupants of multiple dwellings," and "not members of the public generally." *Id.* at 672. On this basis, the court reversed the district court's dismissal of the city from the case. *Id.* at 674.

Only five members of the court joined the majority, however. Three justices specially concurred on the basis that the statutes and ordinances themselves were not in the record. *Id.* at 674 (McCormick, J., specially concurring). The special concurrence explained that such statutes and ordinances normally do *not* establish a legal duty on the part of the municipality. *Id.* at 674–75.

*Wilson* was decided nearly four decades ago. Subsequent decisions of our court like *Raas* and *Estate of McFarlin* have confirmed that the public-duty doctrine is "alive and well in Iowa." *Estate of McFarlin*, 881 N.W.2d at 59 (quoting *Raas*, 729 N.W.2d at 449).

**E. An Exception to the Public-Duty Doctrine?** Johnson also argues that even if the public-duty doctrine remains alive and well, it should not apply in this case because of the "grave danger" presented by this matter of "highway safety." But the public-duty doctrine applies even when highway safety is involved. *See Kolbe,* 625 N.W.2d at 728–30.[2]

One can also debate the degree of danger here. The County presented undisputed evidence that there had been no complaints, concerns, or requests for action during the forty years the concrete embankment had been in place. The embankment was in neither the *traveled* portion of the right-of-way nor the shoulder. *See* Iowa Code

---

[2]Johnson cites *Harryman v. Hayles* and *Symmonds v. Chicago, Milwaukee, St. Paul & Pacific Railroad.* *Harryman,* 257 N.W.2d 631 (Iowa 1977), *overruled on other grounds by Miller v. Boone Cnty. Hosp.,* 394 N.W.2d 776, 781 (Iowa 1986), *abrogated by Estate of McFarlin,* 881 N.W.2d at 61 n.6; *Symmonds,* 242 N.W.2d 262 (Iowa 1976), *abrogated by Estate of McFarlin,* 881 N.W.2d at 61 n.6. In *Harryman,* this court found that a county owed a duty to a passenger in a vehicle who sustained serious and permanent injuries when the vehicle overturned after striking a washed-out portion of a county road. 257 N.W.2d at 633, 638. "This duty runs to all those rightfully using the roads." *Id.* at 638. In *Symmonds,* which arose out of a fatal automobile–train collision at an unguarded crossing on a county road, this court held a county owed a duty to install a stop sign at this "particularly hazardous crossing." 242 N.W.2d at 265. As we explained in *Estate of McFarlin,* these cases have been superseded by more recent authority, especially *Kolbe. See Estate of McFarlin,* 881 N.W.2d at 61 n.6.

§ 318.1(6). It is also undisputed that the driver of the Silverado fell asleep at the wheel, drove across the other side of the highway, kept going off the highway into a ditch, and then traveled without applying the brakes for over 200 feet before striking the embankment. When a driver falls asleep and loses control of the vehicle, unfortunately many bad things can happen. These include a head-on collision with oncoming traffic; other vehicle collisions; or a collision with a road sign, a light standard, a guard rail, or other object. *See, e.g., State v. Butler*, 706 N.W.2d 1, 2 (Iowa 2005) (driver "probably fell asleep at the wheel," "crossed the centerline of the highway and struck five motorcyclists, killing three and seriously injuring two"). Regardless, this is an argument about foreseeability, not duty, and it no longer holds water under the Restatement (Third) of Torts. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009).

Johnson also argues that *Estate of McFarlin* is distinguishable because the state there did not have control of the dredge pipe. 881 N.W.2d at 53–54. While there are some factual distinctions between the two cases, they do not on the whole cut in favor of Johnson. In *Estate of McFarlin*, the state actually owned and managed the lake. *Id.* While it did not operate the dredge pipe, it actually permitted the dredging and where it would occur on an annual basis. *Id.* at 54. There had been prior reports to the state of boaters striking the dredge. *Id.* The state also placed buoys on the lake, although not the ones specifically warning about the dredge pipe. *Id.* Here, the concrete embankment was on private property and had been there without incident for forty years. And while the County could have ordered the removal of the embankment, the state certainly had the same degree of "control" over the dredge pipe in *Estate of McFarlin*. *See id.* In fact, the state authorized its presence on an annual basis. *Id.*

**F. Claims Other than Negligence.** Johnson urges that the district court erred in dismissing her nuisance and premises-liability claims against the County because the public-duty doctrine only prevents the recognition of a common law duty of reasonable care. Our cases applying this doctrine belie Johnson's contention. We said in *Kolbe*, "[I]f a duty is owed to the public generally, there is no liability to an individual member of that group." 625 N.W.2d at 729 (quoting *Wilson*, 282 N.W.2d at 667). "No liability" includes these other tort claims. In fact, the plaintiffs had alleged a premises-liability claim against the state in *Estate of McFarlin*, No. 14–1180, 2015 WL 5292154, at *6 (Iowa Ct. App. Sept. 10, 2015).

Finally, Johnson added by amendment a count to her petition alleging a private right of action "under Iowa statutes." But as already noted, she does not contend that Iowa Code chapter 318 per se provides a private right of action. Her contention rather is that the *nuisance* statute (section 657.1) authorizes a suit for injuries resulting from the County's failure to follow section 318.4. *Cf. Estate of McFarlin*, 881 N.W.2d at 56–58 (rejecting plaintiffs' claim that various provisions in chapter 461A created a private right of action). As we have already explained, this claim cannot succeed because of the public-duty doctrine.

**G. Nonfeasance vs. Misfeasance.** Johnson also voices concern that applying the public-duty doctrine here would eliminate a plaintiff's ability to pursue a claim where a county negligently erects an obstacle directly in the path of motorists. We are not persuaded.

> In the classic case for invoking the public duty doctrine, the duty is imposed by a statute that requires the defendant to act affirmatively, and the defendant's wrongdoing is a *failure* to take positive action for the protection of the plaintiff.

2 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 345, at 375 (2d ed. 2011) (footnote omitted); *see also id.* § 346, at 380

(discussing "the fundamental distinction between positive acts of negligence on the one hand and non-action on the other"); 18 Eugene McQuillin, *The Law of Municipal Corporations* § 53:18, at 251 (3d rev. ed. 2013) [hereinafter McQuillin] ("The rule protects municipalities from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole.").

We believe the limited resources of governmental entities—combined with the many demands on those entities—provide a sound justification for the public-duty doctrine. *See* Restatement (Third) § 37, cmt. *i*; *see also* 18 McQuillin § 53:18, at 253–54.[3] Cities, counties, and the state have to balance numerous competing public priorities, all of which may be important to the general health, safety, and welfare. This does not mean the same no-duty rule would protect that entity when it affirmatively acts and does so negligently. *Cf. Skiff v. State*, 479 N.Y.S.2d 946, 951 (Ct. Cl. 1984) (finding the state could be liable when a vehicle left a state road and traveled along a drainage ditch into an earthen headwall where the ditch was "created by the State" and "constituted a trap or snare"). That case is not before us today.

---

[3]According to McQuillin,

> Courts give several reasons for the rule. First, it is impractical to require a public official charged with enforcement or inspection duties to be responsible for every infraction of the law. Second, government should be able to enact laws for the protection of the public without exposing the taxpayers to open-ended and potentially crushing liability from its attempts to enforce them. Third, exposure to liability for failure to adequately enforce laws designed to protect everyone will discourage municipalities from passing such laws in the first place. Fourth, exposure to liability would make avoidance of liability rather than promotion of the general welfare the prime concern for municipal planners and policymakers. Fifth, the public duty rule, in conjunction with the special relationship exception, is a useful analytical tool to determine whether the government owed an enforceable duty to an individual claimant.

18 McQuillin § 53:18, at 253–54 (footnotes omitted).

**V. Conclusion.**

For the foregoing reasons, we affirm the district court's grant of summary judgment to the County.

**AFFIRMED.**

All justices concur except Wiggins, Appel, and Hecht, JJ., who dissent.

**WIGGINS, Justice (dissenting).**

### I.  The Public-Duty Doctrine.

The majority decides this case based on the public-duty doctrine. This doctrine provides, "[I]f a duty is owed to the public generally, there is no liability to an individual member of that group." *Kolbe v. State*, 625 N.W.2d 721, 729 (Iowa 2001) (en banc) (quoting *Wilson v. Nepstad*, 282 N.W.2d 664, 667 (Iowa 1979)).  However, if "the plaintiff can establish, based on the unique or particular facts of the case, a special relationship between the [s]tate and the injured plaintiff consistent with the rules of Restatement (Second) of Torts section 315[,]" then the breach of duty owed to the public at large is actionable.  *Id.* (emphasis omitted).

Restatement (Second) of Torts section 315 provides,

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> > (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> > (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts § 315 (Am. Law Inst. 1965).

I now turn to *Estate of McFarlin v. State*, 881 N.W.2d 51 (Iowa 2016), a 4–3 decision that largely forms the basis of the majority's decision in this case.

**A.  *Estate of McFarlin* Does Not Apply to This Case.**  In *Estate of McFarlin*, a boy riding in a speedboat died when the driver steered the speedboat at thirty miles per hour between two danger buoys and struck a submerged dredge pipe.  881 N.W.2d at 53.  The state owned the lakebed of Storm Lake, where the accident occurred, and allowed the public to use

the lake. *Id.* The state was not responsible for the day-to-day operations of the dredge pipe. *Id.* at 54. In applying the public-duty doctrine, the majority reasoned the plaintiffs did not belong to a particularized, identifiable class because Storm Lake was open to the public and all members of the public were free to use it. *Id.* at 62. The majority refused "to limit the public-duty doctrine merely because the claim arose in a confined geographic area such as a public lake." *Id.*

On the contrary, the dissent reasoned the state owed a duty not to the members of the public but "only to the boaters on Storm Lake who were exposed to a risk of serious injury or death from the submerged dredge pipe." *Id.* at 68 (Hecht, J., dissenting). The dissent further reasoned "the risk allegedly created by the [s]tate and its dredging agents endangered a limited universe of people at a specific location." *Id.* It was irrelevant that local entities, not the state, owned and operated the dredge pipe because the state nevertheless controlled the prescribing terms for the dredging activity through the permitting process. *See id.* at 70 & n.10. Moreover, the state through its nonperformance created the very specific risk of physical injury or death to boaters, and thus "the [s]tate's involvement in creating such a risk justifies our recognition of an affirmative duty in this case." *Id.*

I think the dissent in *Estate of McFarlin* correctly found an affirmative duty on the part of the state. Likewise, in the instant case, I cannot reach the same outcome as the majority even if the public-duty doctrine applies because I find an affirmative duty on the part of the County.

The County has a statutory obligation to remove the concrete embankment in the ditch pursuant to Iowa Code section 318.4, yet the County failed to do so. Section 318.4 provides, "The highway authority

*shall* cause all obstructions in a highway right-of-way under its jurisdiction to be removed." Iowa Code § 318.4 (2013) (emphasis added).

Section 37 of the Restatement (Third) of Torts provides, "An actor whose conduct has not created a risk of physical . . . harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38–44 is applicable." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 37, at 2 (Am. Law Inst. 2012) [hereinafter Restatement (Third)].

Section 38 of the Restatement (Third) provides, "When a statute requires an actor to act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and to determine the scope of the duty." *Id.* § 38, at 21. Furthermore, comment *c* of section 38 provides,

> When the legislature has not provided a [private cause of action], but the interest protected is physical . . . harm, courts may consider the legislative purpose and the values reflected in the statute to decide that the purpose and values justify adopting duty that the common law had not previously recognized.

*Id.* § 38 cmt. *c*, at 22.

At first glance, the language of Iowa Code section 318.4 reflects a nonactionable duty owed to the public. However, I would find an affirmative duty owed by the County to the plaintiff Kaitlyn Johnson and a special relationship between Johnson and the County. I refer to an instructive case to illustrate my point.

In *Irwin v. Town of Ware*, the Supreme Judicial Court of Massachusetts addressed the issue of whether police officers of the town owed the plaintiffs a duty to remove an intoxicated motorist from the roadways. 467 N.E.2d 1292, 1299 (Mass. 1984). Specifically, the court phrased the issue as "whether the standard of care owed to the general

public by the town through its police officers in the instant case implies a . . . special relationship." *Id.* at 1302. The town argued the officers owed this duty to the public only, and thus the plaintiffs could not maintain a private negligence action against it for harm caused by the officers' failure to remove the intoxicated motorist from the roadways. *Id.* at 1299.

In rejecting the town's argument, the court reasoned the applicable statutes providing for the duties of the police give rise to a special relationship. *Id.* at 1302–03. The court first observed the relevant statutes gave the officers certain privileges and rights, such as the right to arrest an intoxicated person without a warrant. *Id.* at 1302. The court then observed some of the relevant statutes required the police to act, such as mandating officers to prevent disturbances. *Id.* The court therefore reasoned, "[The] police can be found to be in neglect of statutory responsibilities by *mere failure to act* when confronted by an intoxicated driver." *Id.* (emphasis added). In finding an affirmative duty owed to the plaintiffs, the court concluded, "[T]here is a special relationship between a police officer who negligently fails to remove an intoxicated motorist from the highway, and a member of the public who suffers injury as a result of that failure." *Id.* at 1303–04. Specifically, based on its interpretation of the statutes establishing police responsibilities, the court concluded the legislature intended "to protect both intoxicated persons and other users of the highway." *Id.* at 1304.

Here, the language of Iowa Code section 318.4 is mandatory. Again, section 318.4 provides, "The highway authority *shall* cause all obstructions in a highway right-of-way under its jurisdiction to be removed." Iowa Code § 318.4 (emphasis added). Similar to the applicable statutes in *Irwin* requiring action on the part of the police, section 318.4 leaves no room for discretion on the part of the highway authority.

Specifically, this section requires the highway authority to remove all obstructions in a right-of-way. I would therefore find the County owes an affirmative duty to an identifiable class of persons exposed to a risk of physical harm from obstructions on the highway right-of-way and harmed by its failure to comply with the statutory requirement of section 318.4. The County has the authority to order the removal of the concrete embankment but it has not done so despite the mandatory language of section 318.4.

Notably, section 318.4 does not specify that the highway authority must remove all obstructions only in the *traveled* portion of the right-of-way. Section 318.1 defines "highway right-of-way" as "the total area of land, *whether reserved by public ownership or easement*, that is reserved for the operation and maintenance of a legally established public roadway." *Id.* § 318.1(3) (emphasis added). This section further provides, "This area shall be deemed to consist of two portions, a central traveled way including the shoulders and *that remainder on both sides of the road, between the outside shoulder edges and the outer boundaries of the right-of-way*." *Id.* (emphasis added). It is irrelevant that the concrete embankment is not in the traveled portion of the right-of-way. The legislature has broadly defined right-of-way to include the untraveled portion of the total area constituting a public roadway.

I note the distinction between nonfeasance and misfeasance is artificial in practice. In practice, the result is the same, whether the County committed misfeasance by affirmatively erecting the concrete embankment or whether the County committed nonfeasance by failing to remove the concrete embankment when it was under an affirmative duty to do so. The public-duty doctrine does not apply because the County

owed an affirmative duty to Johnson, regardless of whether the majority packages the duty in terms of nonfeasance or misfeasance.

Additionally, a special relationship exists between Johnson and the County. Section 40(b)(3) of the Restatement (Third) states "a business or *other possessor of land* that holds its premises open to the public with those who are lawfully on the premises" owes a duty of reasonable care. Restatement (Third) § 40(b)(3), at 39 (emphasis added). It is an undisputed fact that the County has a right-of-way easement across the concrete embankment. Thus, because the County is an easement holder, it is a possessor of land. *See id.* § 49 cmt. *d*, at 226 ("Possession of land may be divided among several actors . . . . In such cases, each actor has the duty provided in this Chapter with respect to the portion of the premises controlled by that actor."). The County could have ordered the removal of the concrete embankment because it "has the authority and ability to take precautions to reduce the risk of harm to entrants on the land." *Id.* § 49 cmt. *c*, at 225. The majority concedes as much. Because the County fits comfortably within the definition of possessor of land, which is one of the special relationship categories listed in section 40(b), I would find there is a special relationship between Johnson and the County.

**B. The Public-Duty Doctrine Conflicts with Our Legislature's Enactment of the Iowa Tort Claims Act (ITCA) and the Iowa Municipal Tort Claims Act (IMTCA).** The public-duty doctrine is a form of judicially created sovereign immunity and is at odds with the legislature's clear intent in limiting the scope of sovereign immunity. *Adam v. State*, 380 N.W.2d 716, 724 (Iowa 1986) (en banc) (noting the public-duty doctrine is clearly incompatible with the ITCA).

We cannot search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear. *Thompson v. Kaczinski,*

774 N.W.2d 829, 832 (Iowa 2009). We give words in the statute their ordinary and common meaning absent a statutory definition or an established meaning in the law. *See id.* at 832–33. When the explicit terms of a statute are ambiguous, we resort to the rules of statutory construction. *Id.* at 833. "[I]f reasonable minds could differ or be uncertain as to the meaning of the statute[,]" there is ambiguity in the statute. *Id.* (quoting *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996)).

In determining legislative intent, we take into account "not only the language of the statute, but also its subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of various interpretations." *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003). We glean legislative intent from the words the legislature has chosen, not what we think it should or would have said. *Fagen v. Grand View Univ.*, 861 N.W.2d 825, 834 (Iowa 2015). Additionally, we cannot "extend, enlarge[,] or otherwise change the meaning of a statute" under the guise of construction. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). Lastly, to give effect to the legislature's intent, we must examine and interpret the statute as a whole rather than solely engage in a piecemeal analysis. *Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010). I now turn to the relevant statutes.

The ITCA provides, "The state shall be liable in respect to [negligence] claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances . . . ." Iowa Code § 669.4. Thus, in making the state liable for negligence as if the state was a private actor, the ITCA abrogates sovereign immunity, with some express exceptions codified in section 669.14. *See id.* § 669.14. Similar to the ITCA, the IMTCA provides, "Except as otherwise provided in this

chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties . . . ." *Id.* § 670.2. Thus, in making governmental subdivisions liable for negligence, the IMTCA abrogates sovereign immunity, with some express exceptions codified in section 670.4. *See id.* § 670.4.

The public-duty doctrine creates immunity where the legislature has not done so. The language of the ITCA and the IMTCA is clear. The legislature has not codified the public-duty doctrine as an exception in section 669.14. *Id.* § 669.14. Nor has the legislature included the public-duty doctrine as one of the exceptions to the waiver of immunity in section 670.4. *Id.* § 670.4. We should therefore exercise judicial restraint and refrain from engrafting the public-duty doctrine onto the respective statutes.

Additionally, we stated in *Kolbe* that the state "shares the same—but not greater—liability to injured parties as other defendants under like circumstances." 625 N.W.2d at 730 (quoting *Sankey v. Richenberger*, 456 N.W.2d 206, 209 (Iowa 1990)). This statement cuts both ways: the state or governmental subdivisions share the same—but not lower—liability to victims as other private actors in similar situations.

A number of jurisdictions have been joining the trend of rejecting or at least limiting the public-duty doctrine. *See Estate of McFarlin*, 881 N.W.2d at 66 & n.8 (collecting cases); *see also Wilson*, 282 N.W.2d at 667 ("[T]he trend in this area is toward liability."). Moreover, in Iowa, we have narrowed the application of the doctrine. *See Kolbe*, 625 N.W.2d at 729. We have also either addressed or doubted the continued viability of the doctrine in *Wilson*, 282 N.W.2d at 667–69, and in *Adam*, 380 N.W.2d at 724. I agree with the dissent in *Estate of McFarlin* that the characterization of the doctrine as "alive and well" in *Raas v. State*,

729 N.W.2d 444, 449 (Iowa 2007), was "inapt." *Estate of McFarlin*, 881 N.W.2d at 67.

Lastly, the public-duty doctrine is "confusing and inconsistent." *Hudson v. Town of E. Montpelier*, 638 A.2d 561, 568 (Vt. 1993). For example, we declined to apply the public-duty doctrine when the victim belonged to an identifiable class, such as "all those rightfully using the roads" in Lee County, *Harryman v. Hayles*, 257 N.W.2d 631, 638 (Iowa 1977), *overruled on other grounds by Miller v. Boone Cnty. Hosp.*, 394 N.W.2d 776, 781 (Iowa 1986), *abrogated by Estate of McFarlin*, 881 N.W.2d at 61 n.6, and "the traveling public" in Scott County, *Symmonds v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 242 N.W.2d 262, 265 (Iowa 1976), *abrogated by Estate of McFarlin*, 881 N.W.2d at 61 n.6. In *Estate of McFarlin*, we stated in dictum that "[w]e no longer recognize county-wide special classes of motorists after *Kolbe*." 881 N.W.2d at 61 n.6 (majority opinion). Yet we neither explicitly stated nor implicitly hinted at such a notion in *Kolbe*.

I disagree with *Estate of McFarlin*'s characterization that *Kolbe* abrogated *Harryman* and *Symmonds*. The dictum in *Estate of McFarlin* simplifies and overlooks the context in which we decided *Kolbe* and fails to look at the broader legal principle behind it. In *Kolbe*, a motorist with impaired vision struck a bicyclist on a county road. 625 N.W.2d at 724. The plaintiffs—the bicyclist and his wife—filed suit against the state, alleging the state negligently issued driving privileges to the motorist despite knowledge of his impaired vision. *Id.* at 724–25. We considered the issue of whether the state owed a duty to the plaintiffs when it issued a driver's license to the motorist. *Id.* at 728. Answering in the negative, we reasoned the legislature enacted the licensing statute for the benefit of the public at large. *Id.* at 729. We also reasoned the plaintiffs did not

claim a special relationship with the state arising out of the unique or particularized facts of the case. *Id.* at 730. In affirming summary judgment in favor of the state, we applied the public-duty doctrine and held the state did not owe a duty to the plaintiffs. *See id.* at 729–30.

My takeaway from *Kolbe* is that the question of whether a plaintiff belongs to a particularized class is a fact-based analysis taking into account the unique circumstances of each case. In sum, I find the triad of *Harryman*, *Symmonds*, and *Kolbe*, all of which dealt with classes of motorists, solidifies the notion that the public-duty doctrine "is confusing" and results in "unpredictable" outcomes. *See Hudson*, 638 A.2d at 566.

## II. Conclusion.

For the foregoing reasons, I respectfully dissent. I would reverse the district court's grant of summary judgment to the County.

Hecht and Appel, JJ., join this dissent.