**IN THE COURT OF APPEALS OF IOWA**

No. 24-0139
Filed March 5, 2025


**JOANNE C. JONES,**
        Plaintiff-Appellant,

**vs.**

**MERCY HOSPITAL, MERCY MEDICAL CENTER, CEDAR RAPIDS IOWA, and JORDAN C. IMOEHL,**
        Defendants-Appellees.
_____


        Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.


        The plaintiff appeals the dismissal of her civil suit against a doctor and medical center for failure to file a certificate of merit pursuant to Iowa Code section 147.140 (2023).  **AFFIRMED.**


        John G. Daufeldt of John C. Wagner Law Offices, P.C., Amana, for appellant.

        Dawn M. Gibson, Christine L. Conover, and Carrie L. Thompson of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, and Jennifer E. Rinden, Vincent S. Geis, and Eric P. Martin of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellees.


        Heard by Greer, P.J., and Langholz and Sandy, JJ.

**GREER, Presiding Judge.**

After falling in her home, Joanne Jones was taken by ambulance to Mercy Medical Center, where she was treated by Dr. Jordan Imoehl. Jones later brought a lawsuit against the medical center and doctor (collectively, Mercy), claiming professional negligence, infliction of emotional distress, breach of contract, and res ipsa loquitur—all based on the theory that she was not timely diagnosed and treated for a stroke she suffered. After the time to file a certificate of merit passed,[1] Mercy moved to dismiss Jones's suit in its entirety. The district court concluded that expert testimony was necessary to establish each of Jones's four claims, so her failure to file a timely certificate of merit was fatal to her suit. It granted Mercy's motion to dismiss, which Jones challenges in part on appeal.[2]

**I. Background Facts and Proceedings.**

According to Jones's pleadings, she fell in her bathroom on the morning of March 28, 2021. She was unable to get to her feet, so she crawled to her living room, where she accessed a phone. After contacting her son, Vic, an ambulance was dispatched to Jones's home. Ambulance personnel conducted neurological testing on Jones before transporting her to Mercy Medical Center at approximately 10:00 a.m. Jones was seen and treated by Dr. Imoehl and other medical staff employed by Mercy Medical Center while a patient at the medical center. During

---

[1] A certificate of merit "is 'an affidavit signed by an expert witness stating the appropriate standard of care and its alleged breach.'" *Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 837 (Iowa 2023) (citation omitted).

[2] Jones concedes the dismissal of her professional-negligence claim was proper. She limits her challenge on appeal to the court's dismissal of her other three claims.

this time, Jones's left leg was "not working correctly" and her left arm was "noticeably limp and unresponsive"; an x-ray confirmed that Jones fractured her tibia. Another of Jones's sons, Steve, was present at the medical center, and he conveyed to nursing staff and Jones's treating physician his concerns that Jones "was or had suffered a stroke." A CT scan was completed, and the results were negative for a stroke.

Vic visited Jones at the medical center the next morning around 6:30 a.m. "Vic could visibly ascertain that [Jones] had symptoms of someone who had a stroke," and he reported his concerns to nursing staff. Later in the morning, a physical therapist attended Jones and "[c]onfirmed . . . concerns and stated [Jones] had suffered a stroke, which was confirmed by [Jones's] left side of her face being unresponsive to the therapist's request that she smile." Based on the physical therapist's report, Jones was taken for MRI testing around 11:00 a.m. "Later in the day . . . MRI testing confirmed [Jones] had suffered a stroke; and at approximately 6:00 p.m. she was then transferred to the stroke ward for associated stroke care." Vic was later told by Jones's treating doctor that she had suffered a very severe stroke.

Jones filed a lawsuit in March 2023, claiming professional negligence (count I),[3] infliction of emotional distress (count II), breach of contract (count III), and res ipsa loquitur (count IV).

---

[3] Jones used the term "medical malpractice." We understand "professional negligence" to be a synonym of "medical malpractice" in this context and use it instead to be consistent with recent case law discussing section 147.140.

For her professional-negligence claim, Jones asserted she was injured by "want of appropriate consultations, treatments, diagnoses, procedures, prescription of medications, surgery and operative care, and other medical care." She claimed Mercy held itself out as having the specialized knowledge and skills to diagnose and treat stroke-related symptoms; she relied on Mercy to have the specialized knowledge and skills to diagnose and treat stroke-related symptoms; and during the more than two weeks she was a patient of Mercy, she employed Mercy "to provide medical care consistent with successfully and healthfully diagnosing and treating" her stroke symptoms. Jones maintained Mercy breached its duty of care in four ways:

> (a) In failing to timely and properly diagnosis [her] with having suffered a major stroke event;
> (b) In failing to timely and properly initiate its own known stroke care protocols which would have mitigated some or all of the major stroke event's impact on [her];
> (c) In failing to render timely stroke care to [her] on March 28, 2021, despite her family's concerns to Mercy Medical staff that [she] was or had suffered a stroke;
> (d) In failing to exercise a degree of care and skill ordinarily exercised under the conditions and circumstances then and there existing.

Jones included the same assertions and allegations—almost verbatim—under count II, infliction of emotional distress and count IV, res ipsa loquitur.

In count II, infliction of emotional distress, Jones asserted Mercy caused her "emotional distress, including but not limited to the effect of a significant and profound change in lifestyle and quality of life," and characterized the "cause" of Jones's emotional distress as the same four theories:

> (a) In failing to timely and properly diagnosis [her] with having suffered a major stroke event;

(b) In failing to timely and properly initiate its own known stroke care protocols which would have mitigated some or all of the major stroke event's impact on [her];

(c) In failing to render timely stroke care to [her] on March 28, 2021, despite her family's concerns to Mercy Medical staff that [she] was or had suffered a stroke;

(d) In failing to exercise a degree of care and skill ordinarily exercised under the conditions and circumstances then and there existing.

Under count III, breach of contract, Jones claimed Mercy provided her medical care and treatment for more than two weeks and, while she "fulfilled her obligations as a patient under the care of [Mercy], . . . its actions or inactions, *as previously set forth herein*, constitute a breach of contract." (Emphasis added.) The petition did not identify if the contract was oral or written.

Dr. Imoehl answered on June 26, and Mercy Medical Center answered on June 30—starting the respective sixty-day windows for Jones to serve a certificate of merit affidavit on the defendants. *See* Iowa Code § 147.140(1)(a) (2023). Before the time windows expired, Jones alerted the court that the parties agreed to extend the deadline approximately one month until September 24 and asked for the deadline to be extended accordingly. *See id.* § 147.140(4). The district court granted the motion.

On September 27, Mercy filed a joint motion to dismiss with prejudice for lack of certificate of merit. Jones resisted in part; she "concede[d] she has not and cannot provide a [c]ertificate of [m]erit pursuant to section 147.140" for her professional-negligence claim. She stated she would file a voluntary dismissal with prejudice for count I. But she resisted dismissal of the other claims, arguing section 147.140 did not provide for dismissal of claims regarding "ordinary

negligence" or res ipsa loquitar. Mercy replied, explicitly asking the court to dismiss all four claims. Mercy argued:

> [The] additional claims are nothing more than legal gymnastics to try to get around the statutory requirements of [section] 147.140, which [Jones] clearly contemplated given her earlier request for an extension of time to try to obtain the required certificates of merit. All of [Jones] remaining claims are based on [her] claim of [professional negligence] and also require expert testimony and certificates of merit pursuant to [section] 147.140.

The district court granted Mercy's motion to dismiss without a hearing. In its written ruling, the court noted that section 147.140(6) required "dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case." After considering Jones's claims, the court concluded an expert was necessary to prove each one so the lack of certificate of merit was fatal to each count. The court dismissed all four of Jones's claims with prejudice.[4]

Jones appeals.

## II. Standard and Scope of Review.

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 538 (Iowa 2022) (citation omitted). "For purposes of reviewing a ruling on a motion to dismiss, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Id.* (citation omitted). "We construe the petition in its most

---

[4] While Jones's October 13, 2023 response to Mercy's motion to dismiss stated, "[Jones] will file a Voluntary Dismissal with Prejudice regarding Count I," no dismissal followed. So, recognizing all four claims were still at issue at the time of its written ruling on the motion to dismiss, the district court considered and granted Mercy's motion to dismiss as it related to count I as well as the other three counts.

favorable light, resolving all doubts and ambiguities in the plaintiff's favor." *Id.* (cleaned up).

**III. Discussion.**

While Jones concedes the dismissal of her professional-negligence claim was proper, she contends the dismissal of the other three claims was in error, arguing (1) the district court held her to an improper, heightened pleading standard when ruling on the motion to dismiss as to those claims; (2) application of section 147.140 is confined to professional-negligence claims; and (3) the authorities relied on by the district court do not support dismissal, as her claims can be established without expert testimony. We consider each of her arguments in turn.

Jones recognizes that Mercy's motion to dismiss for failure to comply with section 147.140 was filed at an appropriate time and that the district court's decision to dismiss count I was proper. And she is right about that. "[T]he legislature enacted section 147.140 to provide a mechanism for early dismissal with prejudice of professional liability claims against healthcare providers when supporting expert testimony is lacking." *Struck,* 973 N.W.2d at 539. The statute's "reasonable objective is to give the defending health care professional a chance to arrest a baseless action early in the process if a qualified expert does not certify that the defendant breached the standard of care." *Miller v. Cath. Health Initiatives-Iowa Corp.*, 7 N.W.3d 367, 374 (Iowa 2024) (cleaned up). Which is exactly what happened here—with all parties' agreement, Jones was given additional time to retain an expert and get their opinion on her case. The expert, though engaged and retained, "was unable to provide a certificate merit certifying

in his opinion professional negligence had occurred, which [Jones] conceded in her Resistance to the Motion to Dismiss" (according to Jones's brief on appeal).

But she suggests the district court threw the baby out with the bathwater when it disposed of counts II, III, and IV while dismissing her professional-negligence claim for lack of certificate of merit. She argues that, because Iowa allows notice pleading, it was too soon for the court to dispose of the other claims. *See Benskin v. West Bank*, 952 N.W.2d 292, 296 (Iowa 2020) ("Motions to dismiss are disfavored. . . . Lawyers should exercise 'professional patience' and challenge vulnerable cases by summary judgment or at trial instead of through 'premature attacks on litigation by motions to dismiss.'" (citation omitted)); *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004) ("Under notice pleading, nearly every case will survive a motion to dismiss. The petition need not allege ultimate facts that support each element of the cause of action." (internal citation omitted)). But, to allow the defendant to adequately respond to the petition, it "must contain factual allegations that give the defendant 'fair notice' of the claim asserted." *Rees*, 682 N.W.2d at 79. And we will construe the petition in "its most favorable light, resolving all doubts and ambiguities in [the plaintiff's] favor." *Benskin*, 952 N.W.2d at 298 (alteration in original) (citation omitted).

In other words, while conceding it was the proper time to evaluate her professional-negligence claim to determine if expert testimony was necessary, Jones attempts to exclude her other three claims from the same treatment. She argues the application of section 147.140 is limited to only "professional negligence" claims. But our supreme court has already rejected that position:

> Section 147.140 does not use the term "professional negligence" but talks in terms of "alleged negligence in the practice of that profession or occupation or in patient care"—a broader concept. Iowa Code § 147.140(1). *So any claim for negligence in patient care requires the certificate of merit, as long as expert testimony is required to prove up the claim.*

*Struck*, 973 N.W.2d at 540 n.6 (emphasis added). With that in mind, we agree with the district court's approach to ruling on the motion to dismiss—evaluating each of Jones's claims to determine whether, in substance, it is a claim of negligent patient care that required expert testimony to prove it. *Cf. id.* at 542 ("We decline to allow plaintiffs to evade the statutory requirement on appeal by relabeling a professional negligence claim as one of ordinary negligence."). If the claim is, then Jones's lack of timely certificate of merit is fatal and granting the motion to dismiss was proper. *See* Iowa Code § 147.140(6). This analysis requires more than looking at the heading of each count; it involves an examination of the specific allegations made.

We evaluate these claims through the motion-to-dismiss lens, meaning that while Jones "need not allege ultimate facts that support each element of the cause of action," the petition must "inform[] [Mercy] of the incident giving rise to the claim and of the claim's general nature." *Rees*, 682 N.W.2d at 79. Jones argues the district court applied a heightened pleading standard by holding her to the allegations included in her petition when deciding the motion to dismiss, but she "is bound by the allegations actually [pled] within the four corners of her petition." *Struck*, 973 N.W.2d at 541. If she had other, additional allegations to support her claims, "she should have alleged them in her petition or moved for leave to amend to add them, neither of which she did." *Id.* If each claim—whatever the title—boils down to a claim for negligence in patient care that requires expert testimony, then

Jones will have "effectively [pled] herself out of court" due to her lack of certificate of merit. *Id.*

We consider each of Jones's claims in dispute: infliction of emotional distress, breach of contract, and res ipsa loquitur. In doing so, we use the framework set out by our supreme court in *Struck*:

> [A] certificate of merit is required when a plaintiff pleads (1) an "action for personal injury or wrongful death," (2) "against a health care provider," (3) which is "based upon the alleged negligence in the practice of that profession or occupation or in patient care," and (4) "includes a cause of action for which expert testimony is necessary to establish a prima facie case."

*Id.* at 540 (quoting Iowa Code § 147.140(1)(a)).

**Infliction of Emotional Distress.** Jones contends this claim should have survived dismissal because it involves the exercise of ordinary care by Mercy rather than involving its professional standard of care. She points to *Oswald v. LeGrand* and frames the standard as "Mercy owed a duty to [Jones] to exercise ordinary care to avoid causing emotional harm." *See* 453 N.W.2d 634, 639 (Iowa 1990). Even when the concepts of *Oswald* have been applied to other circumstances, our supreme court has said, "Not all negligence is very likely to cause severe emotional distress, and a duty of care to protect against emotional harm does not arise unless negligence is very likely to cause severe emotional distress." *Miranda v. Said*, 836 N.W.2d 8, 30 (Iowa 2013). Still, we return to the pleadings and decision of the district court for our review and consider that Jones confirmed during oral argument that this count II involved the *intentional* infliction of emotional distress. And that is how the district court addressed it. Pointing to how Jones's pled this count, Mercy contends that "infliction of emotional distress"

relates only to an element of damage and is not a cognizable claim—such as the claim of intentional infliction of emotional distress. As the record stands, the district court considered this issue under the umbrella of an intentional-infliction-of-emotional-distress claim and none of the parties asked the court to reconsider its determination.

As pled, Jones's claim is "based upon the alleged negligence in the practice of that profession or occupation or in patient care." *Struck*, 973 N.W.2d at 540. She alleged Mercy's actions or inactions caused her emotional distress, which included:

> (a) In failing to timely and properly diagnosis [her] with having suffered a major stroke event;
> (b) In failing to timely and properly initiate its own known stroke care protocols which would have mitigated some or all of the major stroke event's impact on [her];
> (c) In failing to render timely stroke care to [her] on March 28, 2021, despite her family's concerns to Mercy Medical staff that [she] was or had suffered a stroke;
> (d) In failing to exercise a degree of care and skill ordinarily exercised under the conditions and circumstances then and there existing.

All of the elements address the degree of care and skill of Mercy. And, clearly the first three elements all support a finding that a certificate of merit was necessary for this claim, as they go to medical interventions requiring expert testimony. Thus, as to those three theories, the certificate of merit was required, as the district court correctly determined. *See id.* at 543 (holding pleadings of professional negligence claims and breach of duties of professional care required a certificate of merit).

To consider the last allegation that Mercy failed to exercise a degree of care and skill ordinarily exercised, if we examine the claim under the intentional-infliction-of-emotional distress theory, as Jones advocated at oral argument, Jones

had to prove: (1) Mercy "engaged in extreme and outrageous conduct"; (2) Mercy "intentionally caused, or recklessly disregarded the likelihood of causing, severe or extreme emotional distress" to Jones; (3) Jones "in fact suffered severe or extreme emotional distress"; and (4) Mercy's "extreme and outrageous conduct was the actual and proximate cause of the severe or extreme emotional distress." *White v. Harkrider*, 990 N.W.2d 647, 652 (Iowa 2023). This determination is a legal question requiring proof that the tortious conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted). And as in *White,* a claim of intentional infliction of emotional distress can be resolved at the motion to dismiss stage by reviewing the allegations contained in the petition to see if they meet this high standard of "legally outrageous conduct." *Id.* at 653. Here, they do not. As the fourth allegation noted, Mercy "failed to exercise a degree of care and skill," relating back to the professional care Jones received. And more importantly, the petition contained no allegations of extreme or outrageous conduct by Mercy, thus, dismissal of this count was appropriate.

We affirm the dismissal of count II.

**Breach of Contract.** Jones alleged breach of contract against Mercy, asserting that while she fulfilled her obligations as a patient, Mercy's "actions or inactions, *as previously set forth herein*, constitute[d] a breach of contract." (Emphasis added.) And other than referring back to the claimed professional negligence breaches of duty as the basis for the contractual breach, no other detail was provided. Yet, Jones asserts that section 147.140 does not specifically apply to a breach-of-contract claim.

At first glance, a claim for breach of contract and a claim of negligence seem to be a birds of a different feather. *Compare Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016) ("Generally, to establish a claim for a breach of contract, the [plaintiff] must show (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." (citation omitted)), *with Kolbe v. State*, 625 N.W.2d 721, 725 (Iowa 2001) ("To prove their negligence claim, the [plaintiff] must establish (1) the [defendant] owed them a duty; (2) the [defendant] breached or violated that duty; (3) this breach or violation was a proximate cause of their injuries; and (4) damages.").

We return to how this allegation was pled. With that in mind, we think this case is similar to *Kostoglanis v. Yates*, 956 N.W.2d 157, 158, 160 (Iowa 2021), where our supreme court applied the medical-malpractice statute of limitations to a claim "styled as" breach of contract. While considering the appropriate statute of limitations, the court "look[ed] to '[t]he actual nature of the action.'" *Kostoglanis*, 956 N.W.2d at 159 (citation omitted). "The question 'turn[ed] on the nature of the right sued upon and not on the elements of relief sought for the claim.'" *Id.* (citation omitted). It recognized the plaintiff was "the master of her pleadings," but reiterated the "widely-accepted [provision] that a plaintiff cannot through artful pleading evade the statute of limitations governing medical malpractice actions." *Id.* at 160, 161. The ultimate question posed in *Kostoglanis* is different than the question we must answer, but we apply the same general principles. Fact-wise, Jones's claim

for professional negligence and her breach-of-contract claim are based on the same alleged deficiencies in the medical care and treatment she received. And, at its heart, the breach-of-contract claim is just a repackaged assertion that Jones suffered damages due to alleged negligence in the medical care and treatment provided by Mercy.

"[L]ook[ing] to the substance and not the form of the causes of action," *id.* at 161–62, we find no difference between the properly dismissed professional-negligence claim and Jones's breach-of-contract claim. So, because she required an expert to establish her claim for professional negligence, she would also need an expert to prove Mercy breached the implied contract. Without an expert, dismissal of count III for lack of certificate of merit was appropriate.

Yet to further develop the contract claim, Jones brings us back to *Oswald* and argues in her appellate brief that although the "*Oswald* opinion did not explicitly state it, the court there impliedly premised its holding in part on the existence of a contract between parties for medical services." *See Oswald*, 453 N.W.2d at 639 (noting that claims involving emotional distress damages "have been recognized in the negligent performance of contractual services that carry with them deeply emotional responses in the event of breach"); *see also Miranda*, 836 N.W.2d at 23 (reviewing cases recognizing "emotional distress damages in a case alleging tortious breach of a contract for delivery of medical services surrounding negligent delivery of a child" and suggesting that "certain legal malpractice actions might support a claim for emotional distress damages"). But even if we would extend this claim to what was found in *Oswald*, the contract for services in that case was still premised on the violation of the medical standard of care owed to the plaintiffs,

it was just that there, the breach of the standard of care was within the common knowledge of a layperson. *See* 453 N.W.2d at 640. Jones advances that same theory, arguing that "because of the widespread availability of layperson-oriented information on stroke diagnosis and the fact that [Jones's] sons recognized that [she] was in fact having a stroke, [Mercy's] failure to diagnose [Jones's] stroke is not outside the layperson's knowledge."

Jones relies on *Oswald* to support her argument that if her lawsuit is allowed to go forward, she could prove without expert testimony that Mercy breached the duty to avoid causing emotional harm. In *Oswald*, the plaintiff-parents raised claims involving the professional care and treatment provided to the delivering mother, professional care and treatment provided to the child being delivered, and the emotional impact of the first two on the mother and father. *Id.* at 638. Our supreme court affirmed the dismissal of the claims involving the medical professionals' care and treatment of the mother and child due to the parents' lack of expert to establish the standard of care and breach. *Id.* But it reversed the dismissal of the claims involving the emotional impact to the parents, which were based not on the medical treatment itself but rather on the apparently callous way the professionals undertook their medical duties.[5] *See id.* at 638–40. Finding the

---

[5] As the court later summarized the facts of *Oswald*:

In that case, the parents of a spontaneously aborted fetus sued the treating doctors and hospital. Susan Oswald, who was pregnant, experienced severe bleeding and cramping well ahead of her expected delivery date. Dr. Clark, one of the defendants, examined her and advised her there was nothing to be done and sent her home. The patient's husband became upset and demanded that his wife be admitted to the hospital. She was admitted, but her ensuing lack of care at the hospital resulted in this lawsuit. A nurse told her if the fetus miscarried it would not be a baby, only a "big blob of

exception to requiring expert testimony applied, the court concluded no expert was needed for the parents' emotional-distress claims because they "raise[d] commonly understood issues of professional courtesy in communication regarding a patient's care and treatment. No expert testimony is needed to elaborate on whether the statements by [medical professionals] were rude and uncaring." *Id.* at 639. The court continued: "[A] lay fact finder could easily evaluate the statements in light of the surrounding circumstances to determine whether the language used or message conveyed breached the standard of care expected of medical professionals, and determine the harm, if any, resulting to the plaintiffs." *Id.* Finally, warning that its decision was "closely limited to [the] facts," the court cautioned that "for liability to attach there must appear a combination of the two factors existing here: extremely rude behavior or crass insensitivity coupled with an unusual vulnerability on the part of the person receiving professional services." *Id.* at 639–40.

---

blood." One of her treating doctors said, within her hearing, that he did not want to treat her. At one point, the mother screamed in pain and yelled that she was in labor. The doctor did not do a pelvic exam. He suspected, but did not inform the parents, that the mother had a uterine infection. The doctor told the father to calm down his wife, and approximately one-half hour before the doctor's shift ended, he left for vacation. The baby soon began to be born, without medical attention, until the father kicked on a door and got the attention of the medical staff. A one-pound baby girl was delivered, but a nurse announced she was stillborn. One of the doctors examined her for gender but made no further examination. The father called family members to tell them of their loss and, on returning to the room, discovered the baby grasped his finger. The baby, who had been kept on a surgical tray for half an hour, was rushed to a neonatal unit but died twelve hours later.

*Campbell v. Delbridge*, 670 N.W.2d 108, 110–11 (Iowa 2003)

Here, the district court dismissed Jones's claim, reasoning, "[W]hen a separate cause of action from the medical negligence claim requires proving medical negligence as well, so that [Jones] must prove a 'case within a case,' dismissal is required under Iowa Code section 147.140(6) without a certificate of merit from an expert witness." (Quoting *Struck*, 973 N.W.2d at 544.) Holding Jones to her petition, the allegations here involve the timing of the family member's reports of stroke symptoms and Mercy's course of treatment related to those reports; they are easily distinguished from the "extremely rude" conduct and "crass insensitivity" displayed in *Oswald*.

The question, then, as framed in *Oswald*, is whether Jones could establish a breach of that duty without expert testimony. *See Struck*, 973 N.W.2d at 539 (recognizing "evidence of the applicable standard of care—and its breach—must [generally] be furnished by an expert" when making a claim of negligence against a health care professional (citation omitted)); *Oswald*, 753 N.W.2d at 635–36 (considering exceptions to the general need for expert testimony). Because if Jones's claim could be proved without expert testimony, then a certificate of merit was not necessary, and it should have survived the motion to dismiss. *See Butterfield*, 987 N.W.2d at 841 ("[I]t is reasonable to conclude there is no need for a certificate of merit about the standard of care and breach when an expert is needed for neither of those elements.").

Even if Jones had an "unusual vulnerability," that alone does not meet the standard. Because her allegations required proof of professional negligence to show when the timing of any report was important or proper care for a stroke, we

conclude Jones could not establish her contract claim to damages without expert testimony, so the lack of certificate of merit was fatal to this claim.

We affirm the dismissal of count III.

**Res Ipsa Loquitur.** "Res ipsa loquitur is Latin for 'the thing speaks for itself.'" *Banks v. Beckwith*, 762 N.W.2d 149, 151 (Iowa 2009) (citation omitted). "In 1940, Iowa became one of the first jurisdictions to hold the doctrine of res ipsa loquitur applicable in medical malpractice cases." *Id.* at 152. But the doctrine is "a rule of evidence, not one of pleading or substantive law." *Id.*

"Under Iowa law, res ipsa loquitur applies when '(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used.'" *Brewster v. United States*, 542 N.W.2d 524, 529 (Iowa 1996) (citation omitted). For example, "the rule of res ipsa loquitur applies . . . where a sponge, gauze, an instrument, or [a] needle has been left in the body." *Butterfield*, 987 N.W.2d at 841 (citation omitted). When res ipsa loquitur applies, expert testimony about the standard of care and breach is not necessary because the professional breach is so blatant and obvious that the average layperson understands the breach occurred without the specialized testimony. *See id.*

Here, Jones's "claim" of res ipsa loquitur was properly dismissed for several reasons. Again, at its core, the claim is just another reiteration of her professional-negligence claim; the underlying facts and incident are the same in both. And, as previously stated, she cannot bypass dismissal through artful pleading. *See Kostoglanis*, 956 N.W.2d at 160. Second, res ipsa loquitur is not a substantive

claim that stands on its own. *See Banks*, 762 N.W.2d at 152 ("We consider the doctrine to be a rule of evidence, not one of pleading or substantive law."). It is a rule of circumstantial evidence that permits the jury to make an inference that the defendant was negligent if the plaintiff provides substantial evidence of certain things. *See Singh v. McDermott*, 2 N.W.3d 422, 427 (Iowa 2024). In what reads as a professional-negligence claim, Jones repeated in this count the same alleged breaches of duty from the professional negligence count and brought specific focus to the "special knowledge, training, and skill in the examination, diagnosis, and treatment, and in providing a high degree of skill, care, and knowledge in performing such care and treatment as those associated with stroke related symptoms and care." Here, because Jones links back to the professional duties of Mercy to support this claim, the res ipsa loquitor rule is not an avenue for recovery.

Finally, although expert testimony is not required when the doctrine of res ipsa loquitur applies, asserting res ipsa applies to your claim is not enough to make it true. *See Banks*, 762 N.W.2d at 152 ("To submit a case on the theory of res ipsa loquitur, the plaintiff must introduce substantial evidence that: (1) the injury was caused by an instrumentality under the exclusive control and management of the defendant, and (2) that the occurrence causing the injury is of such a type that in the ordinary course of things would not have happened if reasonable care had been used."). Jones cannot use this doctrine to do an end run around the failure to present a certificate of merit in her professional negligence claim.

For all of these reasons, we affirm the district court's dismissal of count IV.

**IV. Conclusion.**

Because expert testimony is necessary to establish each of Jones's claims against Mercy, we affirm the dismissal of her lawsuit for failure to file a certificate of merit.

**AFFIRMED.**